[No. H008838. Sixth Dist. Dec. 11, 1992.]

EPA REAL ESTATE PARTNERSHIP et al., Plaintiffs and Appellants, v. HEE DUK KANG et al., Defendants and Respondents.

COUNSEL

Jules Pearlman for Plaintiffs and Appellants.

George P. Eshoo and Richard B. Gullen for Defendants and Respondents.

OPINION

PREMO, J.—This is an appeal after a judgment entered in favor of defendants Hee Duk Kang and Inja Kang (hereafter, collectively, Kang), who purchased an apartment complex from plaintiffs EPA Real Estate Partnership and Jack Horton (a partner of EPA Real Estate Partnership) (hereafter, collectively, EPA). On appeal, EPA contends the trial court misapplied the parol evidence rule to exclude evidence of a prior agreement whereby Hee Duk Kang had promised to indemnify EPA if it should incur liability to the listing agent for selling the property during the listing period. As we explain below, we conclude the trial court did not err in excluding this evidence.

## BACKGROUND

EPA owned Grand Security, an apartment complex in East Palo Alto. In early June 1988, EPA signed a listing agreement with Feher Young and Associates Commercial Brokerage, Ltd. (hereafter, Feher Young) to sell Grand Security for $2.5 million. The listing agreement, which expired at midnight on August 15, 1988, contained a provision entitling Feher Young to a 6 percent commission if EPA sold or contracted to sell the property within the listing period.

On July 18, 1988, Hee Duk Kang submitted a written offer directly to Jack Horton, one of the partners of EPA. Horton told Kang that the offered price of $2,450,000 was not acceptable because 6 percent of it would be payable to Feher Young. Kang suggested entering into a contract obligating EPA to sell Grand Security to him at the expiration of the listing period if the property remained unsold at that time. Responding to Horton's concern about liability to Feher Young, Kang assured Horton that the contract would include a promise to indemnify EPA should it incur an obligation to pay a brokerage commission to Feher Young as a result of this sale.

Shortly thereafter, Kang presented to Horton a document entitled "Contract Supplement/Addendum" adding several conditions to the July 18 offer. Among the provisions of this addendum were the following: "6. Seller to sign main contract and amended contract with agreed terms and conditions

on or after August 16th, 1988. [¶] 7. Seller to be released from harm and liability of current listing."

Kang and Horton each signed this addendum on July 21, 1988. A further addendum was signed on July 23, incorporating the July 18 "contract" and addendum and addressing new concerns.[1]

On August 19, 1988, four days after the listing agreement with Feher Young expired, Kang presented Horton with a new agreement, which the parties signed that day after making some amendments. This contract did not result in a final sale, however; on September 30, 1988, the parties signed a new agreement for the sale of Grand Security to Kang for $2,350,000. Printed on a standard real estate purchase contract form, this document contained the following clause: "19. ENTIRE CONTRACT: Time is of the essence. All prior agreements between the parties are incorporated in this agreement which constitutes the entire contract. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this agreement constitutes the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement."

On November 10, 1988, EPA conveyed Grand Security to Kang by grant deed. Feher Young thereafter demanded arbitration pursuant to the listing agreement, claiming a commission and damages. Arbitration resulted in a $249,394.33 award and judgment in favor of Feher Young, which EPA paid. EPA also incurred litigation costs of $41,739.26 in defending Feher Young's claim. After unsuccessfully seeking reimbursement from Kang for the total $291,133.59 it had paid, EPA filed the instant action, alleging breach of contract and promissory fraud.

Kang moved *in limine* to exclude the July 18 offer and July 21 addendum, and "any other oral or written evidence of any alleged promises of indemnity made prior to the execution of the September 30, 1988 agreement." Kang argued that all agreements prior to September 30, 1988, were superseded by and merged into the final contract, which was an integrated document. EPA responded that it was suing on a completely separate agreement, which was not encompassed by the integration clause in the September 30 document;

[1]The July 23 addendum merely clarified EPA's right to sell the property through Feher Young during the listing period, and expressly gave Kang the opportunity to "better" any other offer with their own offer submitted through Feher Young.

that clause related solely to the terms of the sale contained in the document, which had nothing to do with indemnity.[2]

After hearing argument on Kang's motion, the trial court agreed with Kang that the September 30 integration clause precluded introduction of any evidence relating to indemnity. Rather than viewing the indemnity agreement as addressing a separate subject as EPA had urged, the court reasoned that it "dealt with the purchase and sale of the same apartment complex. They're all integrated into the August 19th [*sic*] agreement that does have an integration clause." Accordingly, the court granted Kang's motion and, after denying EPA's motion to reconsider, entered judgment on EPA's complaint in favor of Kang.

### DISCUSSION

EPA contends on appeal that the trial court erred in determining the contract to sell Grand Security to be integrated, and that the court should at least have held an evidentiary hearing before making this finding. The second component of this argument is without merit: the court considered all the evidence presented to it, including the July 21 addendum, at the hearings on both the motion *in limine* and the motion for reconsideration. We will therefore discuss only the first issue raised by EPA—that is, whether the trial court correctly applied the parol evidence rule to exclude the indemnity agreement.

The parol evidence rule generally prohibits the introduction of extrinsic evidence—oral or written—to vary or contradict the terms of an integrated written instrument. (*Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 270 [235 Cal.Rptr. 279]; *Alling* v. *Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1433 [7 Cal.Rptr.2d 718].) According to this substantive rule of law, when the parties intend a written agreement to be the final and complete expression of their understanding, that writing becomes the final contract between the parties, which may not be contradicted by even the most persuasive evidence of collateral agreements. Such evidence is legally irrelevant. (*Alling* v. *Universal Manufacturing Corp.*, *supra*, 5 Cal.App.4th at pp. 1433-1434; *Banco Do Brasil*,

---

[2]Specifically, EPA argued: "Plaintiffs' case in no way depends upon the September 30, 1988 contract, and the trial of this case is not a judicial proceeding 'involving this agreement.' The contract is a final expression of the agreement of the parties *only* with respect to such terms as are included therein; obviously, it could not be an expression of agreement of the parties, final or otherwise, with respect to any subject which is not dealt with therein, and the contract contains no terms whatsoever, relating to the indemnity which is the subject of this action. Evidence of the indemnity would in no respect contradict any term of the September 30, 1988 contract."

*S.A.* v. *Latian, Inc.* (1991) 234 Cal.App.3d 973, 1000 [285 Cal.Rptr. 870]; Code Civ. Proc., § 1856.)

█ Whether the parol evidence rule applies in a given set of circumstances is a question of law, which we consider de novo to the extent that no evidentiary conflict exists. (*Banco Do Brasil, S.A.* v. *Latian, Inc., supra,* 234 Cal.App.3d at p. 1001; *Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1386 [265 Cal.Rptr. 412].) Generally, the resolution of this issue involves a two-part analysis: (1) was the writing intended to be an integration; and (2) is the agreement reasonably susceptible of the meaning urged by the party offering the evidence.

█ In the case before us, only the first question is relevant. EPA argues that the September 30, 1988, contract was not integrated with respect to the July 21 indemnity agreement. Although the final contract contained an integration clause, that clause pertained to the details of the sale, not to the wholly different subject of indemnification. Thus, EPA insists, the indemnity agreement was a completely separate agreement, which did not contradict any of the terms of the contract of sale.

We disagree. As the trial court observed, the indemnity agreement deals with the same subject—the sale of Grand Security—and is therefore encompassed within the integration clause of the final contract, since it varies the extent of Kang's obligation with respect to the sale. Further, a promise of indemnification in the event of a lawsuit by Feher Young was, according to Horton himself, an essential condition of a sale of the property to Kang, and thus would certainly have been included in the final agreement. (Compare *Masterson* v. *Sine* (1968) 68 Cal.2d 222, 228 [65 Cal.Rptr. 545, 436 P.2d 561] [collateral option provision in real estate transaction would naturally have been made as separate agreement] with *Banco Do Brasil, S.A.* v. *Latian, Inc., supra,* 234 Cal.App.3d at pp. 1005-1008 [bank's promise to extend further credit to guarantors would certainly have been included in written guaranty agreement].) Thus, notwithstanding EPA's hypertechnical dissection of the vocabulary used in paragraph 19, it is clear to this court that the September 30 contract was integrated with respect to all matters related to the sale, including a promise by the buyer to reimburse the seller for anticipated expenses resulting from the transaction. Had EPA wished to include such a promise in the final contract, it should have expressly done so in the document, or at least referred to the indemnity provision contained in the July 21 document.

█ If, as here, a contract is integrated, extrinsic evidence is admissible *only* to supplement or explain the terms of the agreement—and even then,

only where such evidence is *consistent* with the terms of the integrated document, and only where the writing is not also intended as an *exclusive* statement regarding its subject matter. (*Alling* v. *Universal Manufacturing Corp., supra,* 5 Cal.App.4th at p. 1435.) Here, EPA has not urged admission of the indemnity agreement to *explain* any ambiguous provision of the final contract of sale; instead, as in *Banco Do Brasil, S.A.* v. *Latian, Inc., supra,* 234 Cal.App.3d at page 1009, it has offered the evidence "as a new, additional and completely different agreement." Furthermore, paragraph 19 explicitly states that the final contract "constitutes the complete and *exclusive* statement of its terms." (Italics added.) We must conclude, therefore, that the parties entered into an integrated contract which superseded all prior understandings related to the sale of Grand Security. The evidence of the prior indemnity agreement was properly excluded.

DISPOSITION

The judgment is affirmed.

Capaccioli, Acting P. J., and Bamattre-Manoukian, J., concurred.