[No. B233555. Second Dist., Div. Four. Mar. 28, 2012.]

BRANDON GREY, Plaintiff and Appellant, v.
AMERICAN MANAGEMENT SERVICES et al., Defendants and
Respondents.

## COUNSEL

Shegerian & Associates and Carney R. Shegerian for Plaintiff and Appellant.

Jackson Lewis, Thomas G. Mackey, Sherry L. Swieca and Brian D. Fahy for Defendants and Respondents.

## OPINION

**EPSTEIN, P. J.**—Appellant Brandon Grey appeals from a judgment of the trial court confirming an arbitration award in favor of respondents. Grey contends he was not required to submit his claims to arbitration under the terms of his employment contract. We agree. We reverse the judgment and remand with directions for further proceedings.

### FACTUAL AND PROCEDURAL SUMMARY

Respondent American Management Services (AMS) is a residential and commercial property management company. In June 2006, Grey applied for a position as an investment manager. AMS provided all applicants with an application packet. This packet contained an issue resolution agreement (IRA), which AMS required all applicants to sign as a condition to having their application considered by AMS. The IRA provided that the applicant agreed to "settle any and all previously unasserted claims, disputes or controversies arising out of or [in] relation to [the] application or candidacy for employment, employment, and/or cessation of employment with [AMS] exclusively by final and binding arbitration before a neutral Arbitrator." Attached to the IRA were issue resolution rules, which described the arbitration procedure. Grey signed the IRA.

On July 3, Grey accepted employment with AMS. AMS required Grey to sign an employment contract. In the "Remedies" section, this contract provided that "a dispute arising out of the alleged breach of any other provision of this Agreement . . . [¶] . . . shall be submitted to final and binding arbitration." A subsequent provision further stated: "This Agreement is the entire agreement between the parties in connection with Employee's employment with [AMS], and supersedes all prior and contemporaneous discussions and understandings." In the next paragraph, the contract provided: "Employee acknowledges that this Agreement is supplemented by such general employment policies and procedures as [AMS] may implement from time to time. Employee agrees that it is his sole responsibility to remain informed about all applicable general employment policies and guidelines of

[AMS] that may be contained in the Employee Handbook or posted on [AMS's] Intranet site." The IRA and the attached issue resolution rules were posted on AMS's intranet.

On April 30, 2009, Grey filed a complaint in superior court against AMS and its then executive Scott Mencaccy. Grey alleged that Mencaccy harassed and ultimately discharged Grey on the basis of his sexual orientation. The complaint stated causes of action for (1) employment discrimination, harassment, and retaliation on the basis of sexual orientation (Gov. Code, § 12900 et seq.); (2) failure to pay wages (Lab. Code, § 200 et seq.); (3) intentional infliction of emotional distress; (4) defamation and compelled self-defamation; and (5) wrongful termination of employment in violation of public policy.

AMS and Mencaccy petitioned the court to compel Grey to arbitrate his claims under the terms of the IRA. Grey opposed this petition, contending that (1) the contract supersedes the IRA and (2) the IRA is unconscionable.

The court granted the petition and ordered Grey to arbitrate his claims.

Grey petitioned this court for a writ of mandate. (*Grey v. Superior Court* (Aug. 27, 2009, B217803).) We denied the petition.

The parties proceeded with binding arbitration. The arbitrator found in favor of AMS and awarded AMS its costs. Grey moved to vacate the award. The trial court confirmed the award. This timely appeal followed.

## DISCUSSION

### I

Appellant argues the contract superseded the IRA. Because the contract has a narrower scope of arbitrable claims than the IRA, he contends the contract does not compel arbitration for his claims against AMS.

" 'The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. (Civ. Code, § 1636; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. (Civ. Code, § 1639.)' (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505] . . . .[)] 'The words of a contract are to be understood in their ordinary

and popular sense . . . .' (Civ. Code, § 1644.)" (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 979 [41 Cal.Rptr.3d 48].)

Under state law, the terms of a final, integrated contract "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." (Code Civ. Proc., § 1856, subd. (a).) But a written instrument "may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement." (Code Civ. Proc., § 1856, subd. (b).)

■ The court determines whether the parties intended the contract to be a final and complete expression of their agreement. (Code Civ. Proc., § 1856, subd. (d).) "The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement. The instrument itself may help to resolve that issue." (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561].) The existence of an integration clause is a key factor in divining that intent. (See *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., supra*, 109 Cal.App.4th at pp. 953–954.) "This type of clause has been held conclusive on the issue of integration, so that parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded. [Citations.]" (2 Witkin, Cal. Evidence (4th ed. 2000) Documentary Evidence, § 70, p. 190, italics omitted.)

The contract contains an integration clause. It provides, in part: "This Agreement is the entire agreement between the parties in connection with Employee's employment with [AMS], and supersedes all prior and contemporaneous discussions and understandings."

AMS argues the parties did not intend the contract to be final or to supersede the IRA. It contends the plain meaning of the phrase "discussions and understandings" does not apply to written agreements, but only oral ones.

Construing the clause as a whole, we interpret it to mean the contract is the final expression of the parties' agreement with respect to Grey's employment and it supersedes the IRA. The clause says the contract is exclusive as to the parties' respective rights and obligations related to Grey's employment. The beginning of the clause provides: "This Agreement is the entire agreement between the parties in connection with Employee's employment . . . ." Because the contract says it is the entire agreement, common sense dictates that it supersedes other prior agreements related to Grey's employment. An "understanding" can mean "an agreement." (Webster's 3d New Internat. Dict.

(2002) p. 2490.) Since the clause then says it supersedes all prior understandings, when read in the context of the clause as a whole, "understandings" means all prior agreements. We find the clause's express language that it is the "entire agreement" and supersedes all prior "understandings" to mean that the parties intended the contract to be the final and exclusive embodiment of their agreement.

AMS contends in the alternative that the IRA is not an "agreement" but an "employment procedure" that supplements the employment contract. The contract states: "Employee acknowledges that this Agreement is supplemented by such general employment policies and procedures as [AMS] may implement from time to time. Employee agrees that it is his sole responsibility to remain informed about all applicable general employment policies and guidelines of [AMS] that may be contained in the Employee Handbook or posted on [AMS's] Intranet site."

The IRA, or internal resolution *agreement*, does not say it is an employment procedure, but that it is an agreement. Consistent with this, AMS makes all applicants sign the IRA. An AMS representative also signs the IRA.

AMS counters that the application packet, which contains that IRA, describes the rules attached to the IRA as "an arbitration procedure." A procedure describing how an applicant's legal claims are to be arbitrated is not an "employment procedure"; it is the procedure for arbitration once an applicant brings an arbitrable claim. AMS also argues that it posted a copy of the IRA on the company intranet. But the IRA is called an agreement and the applicant must sign the IRA as a predicate to consideration of his or her application. It does not become an "employment procedure" by virtue of it being uploaded onto AMS's network.

More fundamentally, a party is not obligated to arbitrate unless he or she has expressly agreed to do so by entering into a valid and enforceable written contract with the party who seeks arbitration. (*Magness Petroleum Co. v. Warren Resources of Cal., Inc.* (2002) 103 Cal.App.4th 901, 907 [127 Cal.Rptr.2d 159], citing Code Civ. Proc., § 1281 et seq.) Thus, in order for the IRA to be enforceable on the issue of arbitration, it must be a written contract. Since the IRA predates the employment contract, it was superseded by that contract's integration clause.

AMS's final contention is that the language of the IRA shows the parties intended it to apply despite the integration clause in the contract. Appellant argues the IRA is inadmissible parol evidence on the issue of whether the contract was intended to be the final, exclusive agreement between the parties.

As we have discussed, the parol evidence rule "generally prohibits the introduction of extrinsic evidence—oral or written—to vary or contradict the terms of an integrated written instrument." (*EPA Real Estate Partnership v. Kang* (1992) 12 Cal.App.4th 171, 175 [15 Cal.Rptr.2d 209].) Parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded. (See 2 Witkin, Cal. Evidence, *supra*, Documentary Evidence, § 70, p. 190.) While extrinsic evidence can be admitted to explain an ambiguity in a contract (*Duncan v. The McCaffrey Group, Inc.* (2011) 200 Cal.App.4th 346, 381 [133 Cal.Rptr.3d 280]), AMS does not argue that the employment contract is ambiguous.

■ Thus, the employment contract supersedes the IRA. AMS cannot use the IRA as extrinsic evidence that the parties did not intend the employment contract to be the sole agreement because it contradicts the plain terms of the contract's integration clause.

Because we find the IRA is superseded, we do not reach Grey's arguments that its specific provisions are unconscionable.

II

Appellant argues that the contract does not require him to arbitrate his claims against AMS. His lawsuit is based on statutory violations, not breach of contract. AMS concedes that the scope of the arbitration clause contained in the employment contract is too narrow as to require Grey to submit his discrimination claims to arbitration.

■ Under "Remedies" the contract provides: "a dispute arising out of the alleged breach of any other provision of this Agreement . . . [¶] . . . shall be submitted to final and binding arbitration." An arbitration clause that limits its scope to disputes arising out of an alleged breach of the contract is more limited in scope than would be, for example, a clause agreeing to arbitrate " 'any controversy . . . arising out of *or relating* to this contract.' " (*Mansdorf v. California Physicians' Service, Inc.* (1978) 87 Cal.App.3d 412, 417 [151 Cal.Rptr. 388].) The scope of the arbitration clause in the employment contract only applies to claims arising from a breach of that contract and does not encompass all claims an employee may have against AMS. All of Grey's claims are for statutory violations, and none arises from a breach of the employment contract. We agree with both parties that Grey is not required to arbitrate his claims under these terms.

## DISPOSITION

The judgment confirming the arbitration award is reversed. The trial court is directed to vacate the award, and the case is remanded for further proceedings. Appellant shall have his costs on appeal.

Willhite, J., and Suzukawa, J., concurred.