Filed 4/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OXFORD PREPARATORY ACADEMY, | |
| Plaintiff and Respondent, | G055685 |
| v. | (Super. Ct. No. 30-2017-00908329) |
| EDLIGHTEN LEARNING SOLUTIONS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Martha K. Gooding, Judge. Reversed and remanded with directions.

Rutan & Tucker, Mark J. Austin, Emily Webb; Burke, Williams & Sorensen, Mark J. Austin and Scott M. Nenni for Defendant and Appellant.

Theodora Oringher, Brian J. Headman, Jon-Jamison Hill; Conner, Fletcher & Hedenkamp and Edmond M. Connor for Plaintiff and Respondent.

\*　　　\*　　　\*

Defendant Edlighten Learning Solutions appeals from the court's order denying its petition to compel arbitration. Defendant entered into three contracts with plaintiff Oxford Preparatory Academy. One of the contracts was a management services agreement containing an arbitration clause. The parties subsequently entered into a termination agreement terminating all rights and obligations under the three contracts with the exception of two payment obligations. Defendant contends the court erred by finding the termination agreement terminated the arbitration clause in the management services agreement. Defendant also claims all of plaintiff's causes of action fall within the scope of the arbitration clause.

We agree the parties did not expressly or impliedly terminate the arbitration clause with respect to disputes over the performance, before the termination date, of their respective contractual obligations. The parties merely divided their respective rights and obligations on a temporal basis — those existing before the termination date and those existing after the termination date. We therefore reverse and remand for the court to decide whether any of plaintiff's causes of action fall within the scope of the arbitration clause.

## FACTS

In September 2012, plaintiff and defendant entered into three agreements. In December 2015, the parties amended the agreements and entered into: (1) a first amended affiliation agreement (Affiliation Agreement); (2) a first amended master agreement for provision of personnel services (Personnel Services Agreement); and (3) a third amended master agreement for management services (Management Services Agreement). The Management Services Agreement contained an arbitration provision stating: "Any controversy or claim arising out of this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the

2

American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction" (the Arbitration Clause).

In May 2016, the parties entered into a termination agreement "to terminate the Affiliation Agreement, the Management Services Agreement, and the Personnel Services Agreement . . . by mutual consent upon the terms set forth herein" (Termination Agreement).  The Termination Agreement included a provision stating:  "Effective on [June 17, 2016], all rights and obligations of [plaintiff] and [defendant] under the [Management Services Agreement, Affiliation Agreement, and Personnel Services Agreement] shall cease, provided that the following obligations of the parties (the 'Surviving Obligations') shall continue following the Termination Date:  [¶]  (a) [Plaintiff] shall pay all amounts due to [defendant] under the Management Services Agreement for services rendered through the Termination Date . . . .  [¶]  (b) [Defendant] shall pay all amounts due to [plaintiff] under the Personnel Services Agreement for services rendered by [plaintiff] employees through the Termination Date . . . ."  The Termination Agreement also included an integration clause stating:  "There are no agreements, understandings, commitments, representations or warranties with respect to the subject matter hereof except as expressly set forth in this Agreement.  This Agreement supersedes all prior oral or written negotiations, understandings and agreements with respect to the subject matter hereof."

In March 2017, plaintiff filed a complaint against defendant asserting causes of action for:  (1) breach of the Management Services Agreement; (2) breach of the Personnel Services Agreement; (3) breach of fiduciary duty; (4) negligence; and (5) violation of Business and Professions Code section 17200 et seq.  Defendant responded with a petition to compel arbitration pursuant to the Arbitration Clause.  Plaintiff opposed the petition and argued the parties terminated any duty to arbitrate by entering into the Termination Agreement.  Plaintiff also argued most of its claims were not subject to arbitration because they did not arise from the Management Services Agreement.

3

The court issued a tentative ruling indicating it was "inclined to find that all of [p]laintiff's claims are within the scope of the [A]rbitration [C]lause contained in the Management [Services] Agreement — which in turn was expressly incorporated by reference (along with the Personnel [Services] Agreement) into the Affiliation Agreement . . . ." But the court noted "[p]laintiff's opposition raise[d] a question about whether the arbitration provision survived the termination of the agreements, including the enumeration of 'surviving' duties and obligations." The court ordered additional briefing on this issue and the "'bundling'/incorporation by reference issue."

After additional briefing, the court denied defendant's petition to compel arbitration. The court reasoned: "(1) the parties explicitly agreed in writing to terminate all three agreements and to extinguish 'all rights and obligations' under them, *with only two specified exceptions*; and (2) the parties' right and obligation to resolve their dispute through arbitration is not among the rights and obligations the parties specified as 'Surviving Obligations.'" In reaching this conclusion, the court relied on several provisions in the Termination Agreement, including the integration clause. Because the parties terminated all rights and obligations under the agreements and "[t]he [A]rbitration [C]lause [was] one of the 'rights' and 'obligations' the parties undertook in at least one of their original agreements," the "[c]ourt conclude[d] it was terminated." The court did not reach the issue of whether all of plaintiff's claims were within the scope of the Arbitration Clause given the court's finding that the parties terminated the Arbitration Clause.

In reaching its decision, the court attempted to distinguish *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1 (*Jenks*), which held a termination agreement did not terminate an arbitration clause contained in an offer letter for employment. First, the court noted defendant cited the case for the first time at the hearing and it "would be manifestly unfair for the [c]ourt to condone such an argument by ambush." Second, the court found the case was factually distinguishable because

4

"*Jenks* did not involve a termination agreement that explicitly and unambiguously (1) declared the prior contracts 'terminated'; and (2) declared that 'all rights and obligations of [the parties] under the Existing Agreements 'shall cease' except for only two specifically enumerated rights or obligations (involving payments) that 'shall continue following the Termination Date.'" While the Termination Agreement and the agreement in *Jenks* both included integration clauses stating there were no other agreements "with respect to the subject matter hereof," the court emphasized the "'subject matter' of the Termination Agreement was the termination of all three [e]xisting [a]greements, the cessation of all rights and obligations under them, and the articulation by the parties of those rights and obligations under the [e]xisting [a]greement[s] that would survive termination." The court accordingly concluded "the import of the integration clause [in the Termination Agreement] is that the Termination Agreement supersedes any and all other agreements regarding what the rights and obligations of the parties continue to be and is the only agreement that addresses what those rights and obligations of the parties are — and it explicitly identifies only two such rights that survive termination . . . ."

## DISCUSSION

Defendant contends the court erred by denying the petition to compel arbitration because the Termination Agreement did not supersede the Arbitration Clause. According to defendant, there is a judicial presumption in favor of arbitration even after the parties terminate the underlying agreement. Defendant also claims the Arbitration Clause survived termination of the Management Services Agreement because the Termination Agreement was silent on dispute resolution. Plaintiff disagrees and argues the Termination Agreement did not need to "contain separate, redundant language specifically identifying the prior arbitration provision as one of the terminated obligations." Relying on the integration clause and provision identifying only two

5

obligations surviving termination, plaintiff argues the parties mutually intended to terminate all other rights and obligations, including the Arbitration Clause. Plaintiff also notes the Management Services Agreement did not include a survival clause identifying the Arbitration Clause or any other rights and obligations surviving termination. We disagree with plaintiff. The Termination Agreement does not demonstrate any intent that it would supersede the Arbitration Clause, or, for that matter, any other right or obligation which arose under the parties' agreements before the termination date. We therefore reverse the order.

*Standard of Review*

"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Because the parties offered no extrinsic evidence, we review the court's order under the de novo standard.

*The Termination Agreement Did Not Supersede the Arbitration Clause for Pretermination Disputes*

The first "step in determining whether there is an enforceable [arbitration] agreement . . . involves applying ordinary state law principles that govern the formation and interpretation of contracts in order to ascertain whether the parties have agreed to some alternative form of dispute resolution. Under . . . California law, arbitration is a

6

matter of contract between the parties." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 787.) As the moving party seeking to compel arbitration, defendant bears the burden to establish the existence of a valid arbitration agreement. (*Avery v. Integrated Healthcare Holdings, Inc.*, *supra*, 218 Cal.App.4th at p. 59.)

Here, the key language of the Termination Agreement is plain. "Effective on [June 17, 2016], all rights and obligations of [plaintiff] and [defendant] under the [Management Services Agreement, Affiliation Agreement, and Personnel Services Agreement] *shall cease* provided that the following obligations of the parties (the 'Surviving Obligations') *shall continue* following [June 17, 2016]." (Italics added.) Nothing in the Termination Agreement waives, extinguishes, excuses, or releases any right or obligation of either party accruing before June 17, 2016. One set of rights and obligations were extant before June 17, 2016, and another set of rights and obligations were extant after June 17, 2016. The Termination Agreement merely divided the rights and obligations of the parties on a temporal basis.

Nor did the integration clause in the Termination Agreement alter that conclusion. It provided: "There are no agreements, understandings, commitments, representations or warranties with respect to the subject matter hereof except as expressly set forth in this Agreement. This Agreement supersedes all prior oral or written negotiations, understandings and agreements *with respect to the subject matter hereof*." (Italics added.) The "subject matter" of the Termination Agreement was the parties' mutual consent to allow them to *cease performance* under their agreements on June 17, 2016, except for two surviving obligations. There is no language in the Termination Agreement that can be interpreted to mean that the "subject matter" of the agreement was to waive, extinguish, excuse, or release any right or obligation of either party arising prior to June 17, 2016. "Absent any showing that [the Termination Agreement] was either expressly or implicitly inconsistent with [the Arbitration Clause], [plaintiff] may not rely on the [Termination Agreement's] silence about dispute resolution to establish that such

7

agreement superseded [the Arbitration Clause]." (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 638.)

As defendant notes, plaintiff cannot "[assert] that the Arbitration Clause has been terminated, but [seek] to enforce other 'terminated' provisions of the Management [Services] Agreement and other Contracts." Plaintiff correctly acknowledges the Termination Agreement does not waive claims accruing before termination, but then, relying on an expansive and overly broad interpretation of the "subject matter" of the Termination Agreement, inconsistently asserts the Arbitration Clause was extinguished with respect to pretermination disputes. Plaintiff cannot have it both ways. Because plaintiff's complaint alleges breaches of contractual obligations arising prior to the termination date, that dispute must be resolved in a manner consistent with the parties' agreement to arbitrate disputes having their source in pretermination performance or nonperformance. The Termination Agreement does not expressly or impliedly reflect the parties' desire to forego arbitration of claims accruing before termination, and the parties' articulation of two surviving payment obligations does not suggest otherwise.

Contrary to the court's holding, *Jenks* is on point. In *Jenks*, the plaintiff received an offer letter for employment containing an arbitration provision. (*Jenks*, *supra*, 243 Cal.App.4th at p. 5.) Although the parties subsequently entered into a termination agreement terminating the plaintiff's employment (*ibid*.), the court found the agreement did not terminate the arbitration provision. (*Id.* at p. 20.) The termination agreement included an integration clause stating: "'This Agreement constitutes the entire agreement between the parties *with respect to the subject matter hereof and supersedes all prior negotiations and agreements*, whether written or oral [with the exception of the prior confidentiality agreements].'" (*Id.* at p. 15.) Based on this language, the *Jenks* court reasoned: "[T]he integration clause is explicitly limited to 'the subject matter hereof,' namely, the terms of plaintiff's resignation. The [t]ermination [a]greement does not mention arbitration at all, and contains no provisions regarding dispute resolution.

8

Consequently, the *identified* forum for dispute resolution remains arbitration based on the original Offer Letter." (*Id.* at pp. 15-16.)

Like the agreement in *Jenks*, the Termination Agreement here includes an integration clause stating there are no other agreements "with respect to the subject matter hereof." While plaintiff acknowledges the "subject matter" of the agreement in *Jenks* was limited to the plaintiff's resignation, it fails to acknowledge the obvious — the subject matter of the Termination Agreement here was limited to allowing the parties to *cease* performance with the exception of two specified obligations. The Termination Agreement also is silent on dispute resolution like the agreement in *Jenks*. We therefore see no fundamental difference between the Termination Agreement and the *Jenks* agreement.

Relying on *Grey v. American Management Services* (2012) 204 Cal.App.4th 803, plaintiff contends the Termination Agreement terminated the Arbitration Clause. The facts in *Grey* are distinguishable from the facts in this case. In *Grey*, the court found a second employment agreement with an arbitration provision superseded a broader arbitration provision contained in an earlier agreement. (*Id.* at pp. 806-809.) In reaching this conclusion, the court analyzed the integration clause in the second agreement, which provided: "'This Agreement is the entire agreement between the parties in connection with Employee's employment with [employer], and supersedes all prior and contemporaneous discussions and understandings.'" (*Id.* at p. 805.) Based on this language, the court found the second agreement was the "final expression of the parties' agreement with respect to [the plaintiff's] employment and it superseded the [earlier agreement]." (*Id.* at p. 807.) The court also found the plaintiff did not have to arbitrate his claims because they did not fall within the scope of the narrower arbitration provision in the second employment agreement. (*Id.* at p. 809.) While plaintiff focuses on the *Grey* court's analysis of the integration clause, plaintiff ignores a key distinction. Unlike the superseding contract in *Grey*, which included an arbitration clause, the

9

Termination Agreement is silent on dispute resolution.  (*Id.* at p. 805.)  Arbitration is not part of the "subject matter" of the Termination Agreement.  Thus, *Grey* cannot support a finding that the Termination Agreement contains the parties' complete agreement on arbitration.

Plaintiff's reliance on federal case law is also misplaced because none of those cases involved a superseding agreement silent on dispute resolution.  In *Granite Rock Co. v. Teamsters Union Local No. 890* (N.D.Cal. Nov. 20, 2012, No. C 12-02974 MEJ) 2012 U.S.Dist. Lexis 165979, the court cited *Grey v. American Management Services*, *supra*, 204 Cal.App.4th 803 and found a second collective bargaining agreement, which contained a grievance procedure and integration clause, superseded an arbitration provision in an earlier collective bargaining agreement.  In *Cesca Therapeutics Inc. v. Syngen, Inc.* (E.D.Cal. Oct. 7, 2015, No. 2:14-cv-02085-GEB-KJN) 2015 U.S.Dist. Lexis 137816, the court emphasized the terminating agreement "expressly indicated a desire to forego arbitration" because it contained a provision requiring any action to be "instituted in a state or federal court in Sacramento County, California."  Finally, in *Thelen Reid Brown Raysman & Steiner LLP v. Marland* (9th Cir. 2009) 319 Fed. Appx. 676, the court found an arbitration provision in a prior agreement did not apply because the parties' dispute was not based on a provision of that agreement.  The court also noted the parties' second agreement "indicated a clear intent to forego the previous arbitration provision."  (*Id.* at p. 679.)  The second agreement expressly required the parties to resolve disputes in a California court.  (*Thelen Reid Brown Raysman & Steiner LLP v. Marland* (N.D.Cal. Dec. 27, 2007, No. C 07-5663VRW related to No. C 06-2071 VRW) 2007 U.S.Dist. Lexis 95502.)

## DISPOSITION

The order denying arbitration is reversed.  On remand, the court is directed to determine whether plaintiff's causes of action fall within the scope of the Arbitration Clause.  Defendant shall recover its costs on appeal.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.