Filed 5/31/22  Plyley v. Renovating Specialist, Inc. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| GEORGE M. PLYLEY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RENOVATING SPECIALIST, INC. et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B309457<br>(Super. Ct. No. 56-2018-00520231-CU-BC-VTA)<br>(Ventura County) |

As the trial court noted, "[T]his action arises from a home improvement contract of under $4,000."  The contract involved the installation of two sliding glass doors at appellant George M. Plyley's residence.  The installer was respondent Renovating Specialist, Inc. (RSI).  RSI's salesperson was respondent Jay Steven Nudelman.  The new doors worked properly and passed inspection, but appellant claimed they did not meet the contract's specifications and building code requirements.  Making a

mountain out of a molehill, appellant filed a 42-page complaint consisting of 10 causes of action.[1]

After a six-day court trial, judgment was entered in respondents' favor on all 10 causes of action. The judgment awarded respondents their costs of $1,223 and awarded RSI its reasonable attorney fees of $95,531.68.

Appellant appeals from the judgment. We affirm. We remand the matter to the trial court with directions to award respondents their costs on appeal and to award RSI its reasonable attorney fees incurred in this appeal.[2]

*Factual Background*

In its statement of decision, the trial court found respondent Nudelman's testimony credible. It did not find appellant's testimony about the home improvement transaction credible. The court stated: "[Appellant's] testimony lacked credibility and was vague about his interactions with RSI's salesperson, Nudelman. . . . Nudelman's testimony was

---

[1] The 10 causes of action are (1) breach of contract, (2) specific performance, (3) rescission, (4) strict liability, (5) breach of express warranty, (6) breach of implied warranty of merchantability, (7) breach of implied warranty of fitness for a particular purpose, (8) violation of Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.), (9) violation of Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.), and (10) violation of Business and Professions Code section 7160.

[2] On October 25, 2021, appellant filed a request to take judicial notice. On November 15, 2021, appellant filed a corrected request to take judicial notice of various building code regulations and a complaint for interpleader filed by Suretec Indemnity Company, which had posted a surety bond on behalf of RSI. The request is denied.

straightforward and credible about this home improvement transaction."  The trial court's "credibility call is binding on this appeal."  (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421; see also *Estate of Joslyn* (1995) 38 Cal.App.4th 1428, 1434, overruled on another ground in *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 140 ["we are bound by the trial court's assessment of credibility"].)  Accordingly, we rely on Nudelman's testimony as to the home improvement transaction.

Nudelman testified as follows:  In July 2018 he met with appellant at appellant's residence.  Appellant "wanted an inexpensive way" to replace "old wood doors" with new sliding glass doors.  There were two ways of doing the replacement – retrofit construction or new construction.  Nudelman always explained to clients the difference between the two types of construction.  He told them that with retrofit construction, the "door will be slid into the existing opening without any other type of construction.  We just take out the doors . . . and then slide the new unit in."  The existing door frame is not removed.  New construction, on the other hand, involves the removal and replacement of the existing door frame.  With new construction, the stucco around the door must be removed.  "And then it's the client's responsibility . . . to hire a stucco repair company to come out and then try and match up the [new] stucco to the existing."  A city building inspector testified, "New construction, you have to demo portions of the stucco around the existing frame and . . . pull out the existing frame . . . .  And then you have to redo the waterproofing, plaster patch, or siding patch, et cetera."  In 97 percent of RSI's installations of sliding glass doors, the existing door frame is left in place.

Appellant knew the difference between retrofit and new construction.  Appellant said to Nudelman, "'I just want retrofit.  I don't want . . . that type of other construction, new construction.'"  "He did not want that, period.  He was very adamant."  "He insistently requested retrofit, and consistently kept telling me, when I tried to explain both types of installation, that he absolutely did not want anything but retrofit."  Appellant wanted to avoid an installation that would "break the stucco" around the door, causing "more expense."  His insistence on retrofit construction "had something to do with his garden window that he had installed when he re-did his kitchen . . . . [T]hey busted out the stucco and . . . apparently he must have been stuck with having to repair the stucco."

The patio outside the doors was below the level of the floor inside the residence.  Nudelman pointed out to appellant that, with retrofit construction, the drop-off from the door threshold to the patio would be too long (approximately nine inches) "to pass code" and would "not [be] safe."  Nudelman recommended that appellant construct a platform outside the door "so he would be able to [safely] get down [from inside the residence] to the main ground area [of the patio].  That would give him a lot of safety and no issues."  Nudelman also "talked to [appellant] about putting a brick veneer on top of the existing [outside] step to bring it up so he wouldn't have such a long step down . . . ."

As to the height of the threshold above the floor inside the residence, Nudelman testified:  "I went like this and said, 'It's going to be about this high.'"  Appellant "didn't seem to have an objection to the elevation of that inch and a half or so, two inches to go out" of the house.

Nudelman "told [appellant that] we always pull a permit on these jobs." Nudelman said that, because the outside patio "step area [was] too low," the door installation would not pass inspection. Appellant responded that "[h]e did not want a permit pulled." "[H]e said it several times adamantly." "He did not want the City inspectors out there." "So at that point, [Nudelman] gave him the [building permit] opt-out form . . . ." Nudelman "read [the form] to him and went over it with him." Appellant "read through it. He seemed to understand, and he signed it off." At appellant's request, Nudelman reduced the price of the installation from $4,469.32 to $3,885.

The contract shows Nudelman's measurements for the doors. Nudelman testified that they were "rough opening measurements." They were "not precise" and not "the final measurement." They were "for pricing." RSI would later "send out a foreman to . . . get the exact measurements."

Appellant signed the contract. Thereafter, Nudelman had no involvement in the home improvement project.

Immediately after the installation of the sliding glass doors, appellant signed a "Job Completion Certificate." He rated his "overall satisfaction" with RSI as "Excellent."

Appellant later complained that the installation of the doors was "'improper.'" RSI said it would send a city building inspector to check out the doors and would pay to fix anything that was improper. Appellant agreed to this arrangement. The inspector approved the installation of the doors.

*Appellant's Complaint*

The complaint alleged that RSI had agreed to perform new construction, not retrofit construction, as to the installation of the two sliding glass doors. Appellant "explained [to Nudelman] that

5

he sought to have [RSI] remove two exterior oak back doors at his residence, including removal of *all of their door frames*, replacing them with two sets of new sliding glass doors and frames provided and installed by [RSI]. . . . [RSI], acting through [Nudelman], offered to remove the existing doors and frames and provide and install the new doors and frames, as a full frame installation at the Residence for a total price of $3,885.00." "At no time did [appellant] ever request of [Nudelman] or [RSI] for [RSI] to make an in-frame installation of the new doors at his residence." RSI "deviated from the terms of the contract and installed . . . the new doors within the oak frames of the old doors (in-frame installation) instead of taking out and replacing all the old frames as required under the agreement . . . ."

The complaint continued: "[RSI] . . . added a sill or threshold along the bottom of each of the doors rising 2" above the finished floor of the residence, and 9" above the exterior landing, which is a back yard patio. Before [RSI's] work, the preexisting doors that [RSI] replaced, had a threshold that was no higher than 7¾" above the exterior landing (back yard patio), and a threshold that was no higher than the finished floor of the interior of the residence. Under Chapter 10 of the California Building Code, Means of Egress, Thresholds §1010.1.7, (24 CCR, Part 2, Vol 1), the maximum step down for someone exiting the back doors should be 7¾" from the top of the sill/ threshold to the exterior landing (back patio) as it was before [RSI] installed the new doors. [RSI] has thereby created a tripping hazard for [appellant] and [his] guests when they exit the newly installed doors into the backyard of [his] residence. . . . Another tripping hazard is the 2" of threshold above the finished floor . . . ." (Italics omitted.) Appellant is 90 years old and has "a mobility

6

disability . . . making intolerably unsafe for him the tripping hazard." The trial court noted that appellant "has difficulty walking without a cane or other assistance."

*No Violation of Parol Evidence Rule*

Appellant maintains that the trial court violated the parol evidence rule in admitting Nudelman's testimony to vary the terms of the written contract. The parol evidence rule "'generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument.' [Citation.] The rule does not, however, prohibit the introduction of extrinsic evidence 'to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonably susceptible.'" (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) We independently review the trial court's application of the parol evidence rule. (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 14-15; *EPA Real Estate Partnership v. Kang* (1992) 12 Cal.App.4th 171, 176.)

The admission of Nudelman's testimony did not violate the parol evidence rule. His testimony neither varied, altered, contradicted, nor added to the terms of the written contract. The contract did not specify whether RSI would perform retrofit or new construction. It did not say "the door frames shall remain in place" or "the door frames shall be removed and replaced." This created an ambiguity as to a crucial issue. Nudelman's testimony made clear that the parties had understood that RSI would perform retrofit construction, i.e., the door frames would not be removed. The written contract terms are "'reasonably susceptible'" to this interpretation. (*Casa Herrera, Inc. v. Beydoun, supra*, 32 Cal.4th at p. 343.)

Appellant contends, "The integration clause in the contract at issue here shows that this contract is of a higher order of integration" so that "the parol evidence rule bars consideration of . . . Nudelman's testimony." (Bold and capitalization omitted.) The integration clause provides: "This Contract constitutes the entire agreement of the parties, and no written or oral communication between [RSI] and [appellant] before the time of execution of this Contract shall be considered to enlarge, modify, or *explain* the terms of the Contract." (Italics added.)

This clause cannot be deemed to bar the admission of parol evidence in all circumstances. "It is of course the law that a written contract containing the entire agreement of the parties supersedes all prior and contemporaneous negotiations. [Citations.] But [the cited] cases, and many more that could be cited, all recognize that if the contract is uncertain or ambiguous, parol evidence is admissible to show what the parties meant by the uncertain or ambiguous word or phrase used in the written contract." (*Schmidt v. Macco Const. Co.* (1953) 119 Cal.App.2d 717, 730.)

Moreover, despite the integration clause, the written contract does not appear to be complete on its face because of the "new construction/retrofit construction" ambiguity. "'The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement.' [Citation.] Under California law, the presence of an integration clause in the contract *is not conclusive* but is a factor which 'may help resolve' that issue. [Citation.] 'In considering whether a writing is integrated, the court must consider the writing itself, including whether the written agreement appears to be complete on its face

8

. . . .' [Citation.] [¶] . . . "'[T]he court must consider not only whether the written instrument contains an integration clause, but also examine the collateral agreement itself to determine whether it was intended to be a part of the bargain. . . .'"" (*Kanno v. Marwit Capital Partners II, L.P.* (2017) 18 Cal.App.5th 987, 1001, italics added.) Here, the performance of retrofit construction instead of new construction, although not mentioned in the written contract, was clearly intended to be a part of the bargain.

*Appellant Forfeited Argument*
*that Oral Agreement Was Illegal*

Appellant argues that the oral agreement between him and Nudelman to perform retrofit construction was illegal and unenforceable because it violated Business and Professions Code section 7159, subdivision (d) (section 7159(d)), which provides, "A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work . . . ." The argument is forfeited because appellant did not raise it in the trial court. (*Regency Midland Construction, Inc. v. Legendary Structures Inc.* (2019) 41 Cal.App.5th 994, 999.)

The argument also lacks merit. Section 7159(d) does not require that the written contract include all of the specifications for the project. It provides that the contract shall include "[t]he heading: 'Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed,' followed by a description of the project and a description of the significant materials to be used and equipment to be installed." (*Id., subd.* (d)(7).) The contract complied with this requirement.

9

*Building Code Regulations Are Not Implied Terms*
*of the Contract and RSI Did Not Violate the Regulations*

Appellant claims that building code regulations as to the maximum height of the threshold "are implied terms of the home improvement contract that cannot be varied" by the oral agreement between him and Nudelman. (Bold and capitalization omitted.) Thus, to comply with the maximum height regulation, RSI was required to perform new construction and absorb the extra cost even though appellant had insisted that it perform retrofit construction.

We agree with the trial court's analysis in its statement of decision: "Nudelman advised [appellant] of the threshold height issue. [Appellant] insisted on the project going forward. [Appellant] now cannot compel RSI to do a more expensive project than the one he insisted upon and to which he agreed in writing." Common sense and fair play dictate this result. Appellant cites no authority to the effect that building codes are implied terms of all home improvement contracts and that the contractor must comply with them at his own expense despite the homeowner's insistence that he not comply.

In any event, the issue is moot because RSI did not violate building code requirements. The city building inspector approved the installation of the doors "[w]ith no corrections necessary." Nudelman explained to appellant that it was appellant's, not RSI's, responsibility to reduce the threshold height to a safe level after the doors had been installed. Nudelman described the improvements that appellant would need to make to accomplish this reduction. As the trial court noted, appellant "went forward with the retrofit job after being so advised."

10

The inspector testified that, if he had been aware that the threshold was too high, he would have recommended that appellant "install some type of riser or landing" on the patio directly below the threshold. This is exactly what Nudelman recommended. The inspector, who was a licensed general contractor, estimated that it would cost $500 or $600 to make both doors "height code compliant." Instead of filing this costly lawsuit and appeal, appellant should have had the good sense to pay the $500 or $600.

After oral argument, we granted permission to appellant to file a supplemental letter brief concerning the inspector's approval of the doors. Appellant cites this court's opinion in *El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337. Appellant quotes a passage from the opinion (*Id*. at p. 1358) to show that "the fact that the local building inspector approved the work of [RSI is not] dispositive for purposes of this Appeal." The inspector's approval alone may not necessarily be "dispositive" in some cases, but here his approval, *together with Nudelman's testimony*, shows that the work RSI performed did not violate building codes.

*The Contract Was Not Unconscionable*

Appellant argues that the contract "is unconscionable as . . . permitting RSI to install the unsafe doors in violation of the pertinent Building, Residential, and Existing Building Code provisions." "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine "'has both a procedural and a substantive element.'" [Citation.] 'The procedural element

11

addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.'  [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" (*OTO*, *supra*, 8 Cal.5th at p. 126.) The contract here was not one of adhesion.  Appellant had considerable bargaining power and exercised that power.

"Substantive unconscionability examines the fairness of a contract's terms.  This analysis 'ensures that contracts . . . do not impose terms that have been variously described as ""overly harsh""' [citation], '"unduly oppressive"' [citation], '"so one-sided as to "shock the conscience""' [citation], or "unfairly one-sided" [citation.]'" (*OTO*, *supra*, 8 Cal.5th at pp. 129-130.)  The terms of the contract were fair.  They were mutually agreed upon by appellant and Nudelman.  Appellant knew what he wanted and got what he wanted.  Nudelman explained to appellant how he could reduce the height of the threshold.

*Strict Liability Cause of Action*

Appellant contends that the trial court erroneously entered judgment on the fourth cause of action for strict liability because RSI had "intentionally violat[ed]" building code regulations.  In its statement of decision the trial court reasonably concluded that appellant had "failed to meet his burden of proving any elements of a strict liability claim" because "[t]here is no evidence

12

whatsoever that the doors installed by RSI were defectively designed, manufactured or installed."

*Breach of Warranty Causes of Action*

In his complaint, appellant alleged three causes of action for breach of warranty:  breach of an express warranty, breach of an implied warranty of merchantability, and breach of an implied warranty of fitness for a particular purpose.  Appellant asserts that the trial court erroneously entered judgment on these causes of action.  The trial court reasonably concluded that appellant had "failed to meet his burden of proving any of the elements" of these causes of action.

*Cause of Action for Violation of*
*Consumer Legal Remedies Act*

Appellant maintains that respondents violated the Consumer Legal Remedies Act (Civ. Code, § 1750, et seq.) because they "inserted an unconscionable provision in the contract . . . to make the doors unsafe and non-code compliant." As explained above, the contract is not unconscionable.

Appellant claims that respondents' request that he sign a "'Building Permit Opt Out'" form was an "unlawful business practice" and "an attempt . . . to avoid their responsibilities to their customers under the applicable building code regulations." But appellant insisted that a permit not be pulled.  Furthermore, appellant's claim is moot because RSI did pull a permit and the city inspector approved the project.

*Cause of Action for Violation of Business*
*and Professions Code Section 7160*

Appellant contends that "the contract constitutes a 'false or fraudulent representation or false statements knowingly made' and Respondents are liable for this under Business and

13

Professions Code §7160." The trial court reasonably concluded, "There simply is no evidence of any false or misleading statements, representations or conduct by RSI and/or Nudelman in relation to this home improvement contract."

*Attorney Fees Awarded by Trial Court*

The contract provides, "If the parties become involved in legal action resulting from a dispute as to [RSI's] . . . performance of this contract, the court shall award reasonable costs and expenses, including attorney's fees, to the prevailing party." Appellant argues: "The attorney's fees provision of the contract is narrow, only applying to RSI and only to causes of action on the contract, not to tort causes of action. . . . It was reversible error for the Court to award RSI attorney[']s fees for the defense of the tort causes of action . . . [and] for the defense of Nudelman, who is not a party to the contract."

"Once a trial court determines entitlement to an award of attorney fees, apportionment of that award rests within the court's sound discretion. [Citations.] We review the court's decisions for abuse of discretion. [Citation.] The court abuses its discretion whenever it exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish that discretion was clearly abused and a miscarriage of justice resulted." (*Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 505.)

"Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under [Civil Code] section 1717 only as they relate to the contract action." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.) But "[a]ttorneys fees need not be apportioned between

14

distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories." (*Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493.) Here, all of appellant's causes of action involved a common core of facts relating to the home improvement contract between RSI and appellant. They were based on RSI's alleged failure to comply with building code regulations and to install the doors pursuant to the agreed upon specifications.

"'Further, "[a]pportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." . . .'" (*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 625-626.) In its statement of decision, the trial court ruled: "The Court finds that no apportionment between cause[s] of action[] or defendants is possible or feasible. The home improvement contract is inextricably intertwined with all 10 causes of action. As between defendants, no apportionment is possible or feasible. Defendant Nudelman was an employee of defendant RSI. He was the agent who entered into the contract on RSI's behalf. The attorney's fees incurred by RSI were necessarily incurred in Nudelman's defense as well, thus making apportionment impossible." Appellant has failed to carry his burden of showing that the trial court's ruling on attorney fees exceeded the bounds of reason. We have reviewed appellant's other contentions. They are without merit.

*RSI Is Entitled to Appellate Attorney Fees*

Respondents have requested that RSI be awarded its reasonable attorney fees incurred in connection with this appeal. "When a contract or a statute authorizes the prevailing party to recover attorney fees, that party is entitled to attorney fees

15

incurred at trial and on appeal.  [Citations.]  On remand, therefore, the trial court shall determine the amount of attorney fees reasonably incurred" by RSI in connection with this appeal. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 250.)

*Disposition*

The judgment is affirmed.  Respondents are awarded their costs on appeal.  In addition, RSI is awarded its reasonable attorney fees incurred in connection with this appeal.  The matter is remanded to the trial court with directions to determine, upon motion, the appropriate amount of costs and attorney fees.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.


16

Matthew Guasco, Judge

Superior Court County of Ventura

_____

William A. Salzwedel for Plaintiff and Appellant.

The Mouzis Law Firm, Gerald W. Mouzis and Leah K. McKechnie for Defendants and Respondents.