Filed 8/31/21  Scott v. Barlett CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMES SCOTT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JAMIE BARLETT et al.,<br><br>    Defendants and Appellants. | D077675<br><br><br>(Super. Ct. No. 37-2018-00004089-CU-FR-CTL) |

APPEALS from an order of the Superior Court of San Diego County, Randa Trapp, Judge.  Construed as petitions for writ of mandate.  Petitions denied.

Law Office of Michael A. Conger and Michael A. Conger for Plaintiff and Appellant.

Computerlaw Group and Giacomo Russo for Defendants and Appellants.

James Scott sued his former employer, JCB Management, Inc. (JCB), and its owner, Jamie Barlett, for fraud and breach of contract after they allegedly failed to grant him an equity stake in JCB.  JCB, in turn, filed a claim in arbitration against Scott for destroying and retaining electronically

stored information belonging to JCB and for filing his lawsuit in violation of an arbitration clause. In the trial court, JCB and Barlett moved to compel arbitration of Scott's claims against them. The court granted the motion to compel arbitration and stayed the lawsuit.

After a hearing, an arbitrator generally found in favor of JCB and Barlett and against Scott. Among other things, he ordered Scott to return all electronically stored information belonging to JCB. The arbitrator determined that JCB and Barlett were the prevailing parties and awarded them approximately $280,000 in attorney fees and costs.

Back in the trial court, Scott moved to vacate the award, and JCB and Barlett moved to confirm it. In a written order, the court granted and denied each motion in part. The court found that the arbitration agreement empowered it to review the award for errors of law, and it determined the arbitrator erred by finding in favor of JCB on one of its claims. It therefore vacated that portion of the award. Because the arbitrator had not broken out his fee award by claim, the court set a hearing "to determine reasonable attorney fees for the arbitration, consistent with this ruling, which may include additional time spent preparing/opposing the attorney fee motion." The court stated that JCB and Barlett's motion to confirm was granted in part and denied in part. But it noted the arbitration award was "not yet confirmed" as described in its order.

Scott appeals the court's order, and JCB and Barlett cross-appeal. The court's order, however, is not appealable. It is not identified by statute as an appealable order in arbitration proceedings. (See Code Civ. Proc., § 1294.)[1] And, relatedly, it is not a judgment or other final adjudication of the claims of

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

2

the parties relating to the arbitration award.  (See § 904.1, subd. (a).)
Nonetheless, as requested by both parties, we exercise our discretion to
construe the appeals as petitions for writ of mandate.

On the merits, Scott contends the trial court erred by (1) granting JCB
and Barlett's motion to compel arbitration, (2) refusing to vacate the
arbitration award in its entirety, and (3) declining to award Scott his
attorney fees on JCB's statutory claims.  JCB and Barlett contend the court
erred by vacating part of the award based on an error of law.  We conclude
the parties have not shown prejudicial error and deny the petitions for writ of
mandate.

FACTUAL AND PROCEDURAL BACKGROUND

Scott began work at JCB in 2014 as a senior vice president.  He signed
an employment agreement with an arbitration clause.  The clause provided,
in relevant part, "Employee and Employer agree that any dispute that arises
out of or relates to Employee's employment with Employer, including but not
limited to any dispute against any present or former officer, director,
employee, agent, attorney, or insurer of the Employer, the dispute [*sic*] shall
be submitted to binding arbitration pursuant to the Federal Arbitration Act
using the procedural rules for the resolution of employment disputes of the
American Arbitration Association then in effect. . . .  The parties each
expressly waive the right to a jury trial, and agree that the arbitrator's award
shall be final and binding on the parties, provided that any award shall be
reviewable by a court of law for to [*sic*] the fullest extent allowed by law,
including for any error of law by the arbitrator."  (Capitalization omitted.)
The employment agreement empowered the arbitrator to award the
prevailing party its reasonable costs and attorney fees.  It also contained a

3

fee provision allowing the recovery of reasonable attorney fees in any legal proceeding necessary to enforce or interpret the agreement.

Scott also signed a confidentiality agreement. Among other things, the confidentiality agreement required Scott, upon termination of his employment, to return and not retain any JCB confidential information. The agreement stated that JCB may enforce the provisions of the agreement "in a court action for injunctive or other equitable relief" notwithstanding the parties' arbitration agreement.

After several years, Scott and Barlett began negotiations on an agreement that would grant Scott "[p]hantom" equity units in a related JCB entity. The phantom equity units represented a right to receive a cash payment from JCB if a defined liquidity event occurred. Although the parties discussed a draft written phantom equity agreement, the agreement was never signed. The draft contained an integration clause stating that it was the "entire agreement between the parties hereto with regard to the subject matter hereof. This agreement supersedes any other agreements, representations or understandings (whether oral or written and whether express or implied), which relate to the subject matter hereof."

JCB terminated Scott's employment in late 2017. Scott filed his lawsuit against JCB and Barlett soon thereafter. He alleged three causes of action for fraud and two for breach of contract. All of his causes of action were based on JCB and Barlett's alleged failure to grant him equity.

JCB filed a claim in arbitration against Scott. It alleged that Scott destroyed and refused to return electronically stored information belonging to JCB and that he filed his lawsuit in violation of the arbitration clause.

In the trial court, JCB and Barlett moved to compel arbitration of Scott's claims. They argued that the claims fell within the arbitration clause

4

of Scott's employment agreement. The claims therefore belonged in arbitration, and the court action should be stayed or dismissed.

Scott opposed the motion to compel. He contended that his claims were based on the phantom equity agreement, not his employment agreement, and were not subject to arbitration. He believed the integration clause in the phantom equity agreement rendered any prior arbitration clause ineffective for any claims based on the equity agreement. Alternatively, if the arbitration clause covered his claims, Scott argued it was procedurally and substantively unconscionable.

The trial court granted the motion to compel arbitration and stayed the lawsuit. It found that Scott's claims were covered by the arbitration clause in his employment agreement. He had not shown the phantom equity agreement had been executed by either party. And, in any event, the phantom equity agreement did not supersede the arbitration agreement because its integration clause was expressly limited to the subject matter of the agreement, as in *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 15-16 (*Jenks*). The court rejected Scott's claim that the arbitration clause should not be enforced because it was unconscionable.

Scott asserted his fraud and breach of contract causes of action as counterclaims in arbitration. The arbitration proceeded under the auspices of the American Arbitration Association (AAA).

The arbitrator held a three-day hearing in May 2019. After the hearing, the arbitrator issued an interim award addressing the parties' claims and counterclaims. JCB's claims were based on breach of Scott's employment agreement and the confidentiality agreement. JCB also alleged that Scott violated the Comprehensive Computer Data Access and Fraud Act (CDAFA; Pen. Code, § 502) and the federal Computer Fraud and Abuse Act

5

(CFAA; 18 U.S.C. § 1030). Scott's counterclaims were based on breach of the phantom equity agreement and related fraud. In a threshold ruling, the arbitrator rejected Scott's renewed contention that the arbitration agreement was unconscionable and unenforceable.

As to the merits of JCB's claims, the arbitrator found that Scott did not breach his employment agreement by filing his lawsuit in the trial court, rather than making a claim in arbitration. But the arbitrator found that Scott had breached the employment agreement, as well as the confidentiality agreement, by retaining and failing to return JCB electronically stored information. He rejected Scott's defense that returning *copies* of the JCB information was sufficient. Scott breached the agreements by retaining his own copies.

The arbitrator also rejected Scott's defense that JCB did not have standing to sue for breach because the information did not belong to JCB. The arbitrator found that "JCB has the legal standing to seek return of this material based on its own proprietary rights." The confidentiality agreement required Scott to return all documents and data pertaining to his employment. JCB was his employer, even if he worked on projects for various related entities. The arbitrator wrote, "During the last approximate[ly] 2 years of Scott's employment, he was working fulltime on the POS system under a written employment contract with JCB, not with [its subsidiaries]. [Citation.] Thus, Scott's obligation . . . to deliver all documents and data 'pertaining to Employee's employment' includes information pertaining to the POS project. This would include all relevant emails, Word documents and Excel files concerning the project as well as those related to the [phantom equity agreement] negotiations." The arbitrator found that JCB and the related entities were "inextricably tied together in a joint project

6

that Scott was heading" and each company "qualified as real parties in interest having proprietary interests in preserving the confidentiality of the POS project activities and data." Each company, including JCB, had "legal standing to demand return of proprietary information that Scott acquired while employed by and working for these entities."

For the same reasons, the arbitrator found that Scott violated the CDAFA by copying JCB electronically stored information without authorization and by deleting various JCB accounts. But because Scott did not act with the intent to defraud, the arbitrator found that he did not violate the federal CFAA.

For its damages, JCB prayed for its attorney fees and costs incurred in prosecuting its claims. The arbitrator stated that he would "determine JCB's damages as part of the [attorney fee] motion to be served after issuance of this Interim Award." JCB also sought injunctive relief, which the arbitrator granted. He ordered Scott to return all JCB electronically stored information in his possession to JCB's counsel within 10 days of the date of the arbitrator's final award.

As to Scott's claims, the arbitrator found that he had proved neither breach of contract nor fraud. The phantom equity agreement was never finalized, and the parties did not reach an express or implied agreement regarding equity. Even if they had, no liquidity event had occurred and the JCB subsidiary at issue was defunct and worthless. Scott could not prove any damages.

The arbitrator found that JCB was the prevailing party on its claims against Scott. Even though it was only partially successful, it had prevailed on the " 'crux' of the claim, namely, the deleting and copying of company property." The arbitrator also found that JCB and Barlett were the

7

prevailing parties on Scott's claims against them.  The arbitrator set a briefing schedule to determine reasonable attorney fees and costs for JCB's prosecution of its breach of contract and CDAFA claims related to the return of JCB information, as well as JCB and Barlett's defense of Scott's claims.

After briefing, the arbitrator issued his final award.  The final award incorporated the interim award by reference.  In the final award, the arbitrator exercised his discretion under the employment agreement's arbitration clause to award attorney fees to JCB and Barlett.  He wrote, "Scott refused to return all company property he possessed.  His written agreements with JCB required him to do so.  JCB was required to litigate the matter to completion before obtaining an order that such property be returned.  Although the arbitrator found that Scott's retention of the property was not motivated by an intention to share it with others or profit from it, he nonetheless steadfastly refused to return the property throughout the arbitration proceeding.  JCB is entitled, as the prevailing party on the breach of contract claim against Scott, to recover its reasonable and necessary attorney fees and costs that were incurred to recover its property."  Similarly, JCB and Barlett were entitled to their fees and costs for defending against Scott's claims.  After reviewing JCB and Barlett's requests, the arbitrator awarded them approximately $280,000 in fees and costs.

JCB and Barlett filed a motion in the trial court to confirm the award. Scott filed a motion to vacate it.  Scott argued that the award was reviewable for errors of law and the arbitrator had committed numerous such errors in adjudicating JCB's claims against him and awarding attorney fees.  JCB and Barlett responded that expanded review for errors of law was not authorized and the arbitrator had not erred in any event.

8

After hearing argument, the trial court entered a written order granting both motions in part and denying them in part. On Scott's motion to vacate, the court found that expanded judicial review for errors of law was available under *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1340 (*Cable Connection*). The court agreed with Scott that the arbitrator committed legal error in connection with JCB's CDAFA claim. The court interpreted the CDAFA as requiring a showing of damages other than attorney fees. Because the arbitrator had only awarded JCB its attorney fees, JCB could not prevail on the claim.

The court determined that the arbitrator's award of attorney fees must be reassessed in light of its conclusion that JCB should not have prevailed on its CDAFA claim. It wrote, "The arbitration award does not include how much was awarded on each successful claim or defense. This court agrees reasonable attorneys' fees should be awarded for defendants' time spent successfully defending plaintiff's claim for breach of a phantom equity agreement and also their time prosecuting one of their two breach of contract claims only. The parties have not presented this court with the evidence to support the fees. Therefore, the court will set a motion to determine reasonable attorney fees for the arbitration, consistent with this ruling, which may include additional time spent preparing/opposing the attorney fee motion." The court set a hearing in April 2020. It denied Scott's "request for a motion to determine he is the prevailing party" because "[t]he arbitrator correctly concluded defendants prevailed on the contract claims."

On JCB and Barlett's motion to confirm, the court wrote that it was granted in part and denied in part. It stated, "The arbitration is not yet confirmed as described above." It further denied JCB and Barlett's request for prejudgment interest but granted their request for postjudgment interest.

9

The court noted, again, that attorney fees would be determined by separate motion on the date set by the court.

Scott appealed the court's order, and JCB and Barlett filed a cross-appeal. The court's April 2020 hearing did not go forward because of the COVID-19 pandemic. It appears, based on the parties' briefing, that the hearing still has not occurred and no judgment has been entered by the court.

## DISCUSSION

### I

### *Appealability*

### A

Scott contends the trial court erred by granting JCB and Barlett's motion to compel arbitration in part and by not vacating the arbitration award in full. In addition to opposing Scott's contentions, JCB and Barlett argue that the court erred by vacating the award in part and it should have confirmed the award in its entirety. Before we reach the merits, however, we must consider our own appellate jurisdiction. (*Jennings v. Marrale* (1994) 8 Cal.4th 121, 126.)

"Appellate jurisdiction is solely within the province of our Legislature, since the right to appeal is not conferred by our Constitution but by statute. [Citation.] This court is without power to bestow jurisdiction on itself, nor may the parties create jurisdiction by consent, waiver, or estoppel." (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1455, fn. omitted.)

"We have jurisdiction over a direct appeal only when there is an appealable order or an appealable judgment. [Citation.] A judgment is defined as 'the final determination of the rights of the parties in an action or proceeding' [citation] and it is the substance and effect of an adjudication that is determinative, not the form of the decree. [Citation.] As a general test, an

10

order constitutes the final determination of a case 'where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree[.]' " (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 801 (*Otay River*).)

In arbitration proceedings, the Legislature has identified several orders as specifically appealable, in addition to a final judgment. "An aggrieved party may appeal from:  [¶]  (a) An order dismissing or denying a petition to compel arbitration.  [¶]  (b) An order dismissing a petition to confirm, correct or vacate an award.  [¶]  (c) An order vacating an award unless a rehearing in arbitration is ordered.  [¶]  (d) A judgment entered pursuant to this title.  [¶] (e) A special order after final judgment." (§ 1294.)  Notwithstanding this apparent expansion, it remains the case that the identified orders are in some sense the final adjudication of the rights of the parties with respect to a contemplated or completed arbitration.  (*Vivid Video, Inc. v. Playboy Entertainment Group, Inc.* (2007) 147 Cal.App.4th 434, 442-443 (*Vivid Video*); accord, *Otay River*, *supra*, 158 Cal.App.4th at p. 803.)

The trial court here entered an order vacating the arbitration award, in part, and set a further hearing to reexamine the arbitrator's award of attorney fees to JCB and Barlett.  The court stated that the arbitration award was "not yet confirmed" pending the further hearing.

We note, as an initial matter, that the court's order does not appear to be authorized by the statutes governing arbitration.  "[S]ection 1286 reads, 'If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding.'  The Legislature's use of the word 'shall' renders this provision mandatory.

11

[Citation.] 'Under . . . section 1286, once a petition to confirm, correct, or vacate is filed, the superior court has only four choices: It may (1) confirm the award, (2) correct the award and confirm it as corrected, (3) vacate the award, or (4) dismiss the proceedings.' [Citation.] 'A party to an arbitration may seek to vacate or correct the award or to have it confirmed. [Citation.] Upon a petition seeking any of those results, the court *must confirm* the award, *unless* it either vacates or corrects it.' " (*Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 8 (*Karton*).) "[A]n order *partially* vacating is not specifically allowed by the statutes at all." (*Sunnyvale Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168, 174.)

If a trial court follows section 1286, its proceedings will necessarily produce an appealable order. "If a trial court dismisses the petition, it results in an appealable order. ([] § 1294, subd. (b).) If the trial court which does not dismiss the petition also does not correct or vacate an arbitration award, it *must* confirm the award. Entry of judgment in conformity therewith is required ([] § 1287.4), resulting in an appealable judgment under . . . section 1294, subdivision (d). Similarly, if the nondismissing trial court does not confirm the award (or confirm it as corrected), the court must vacate it, resulting in an appealable order under . . . section 1294, subdivision (c). All possible outcomes are provided for under . . . section 1294; confusion only arises when a trial court enters an order outside the scope of its powers as itemized in . . . section 1286." (*Karton, supra*, 176 Cal.App.4th at p. 9.)

Here, although the trial court does not appear to have proceeded precisely in conformance with section 1286, our examination of the substance of the trial court's order reveals that it is not appealable. First, the order is not identified by statute as an appealable order. (See § 1294.) It did not, for

example, simply vacate the award. Second, and relatedly, the order is not a final adjudication of the parties' dispute over the arbitration award. The order expressly contemplates further proceedings in the trial court regarding the award. After the further hearing on attorney fees, the court apparently intends to confirm the award, at least in part, and enter judgment. That judgment will be appealable. The appealed order is not. (See *Vivid Video*, *supra*, 147 Cal.App.4th at p. 443 ["This finality reasoning likewise applies to bar an appeal from an arbitration ruling that, as here, contemplates further proceedings in the trial court."].)[2]

As noted, the overriding consideration for appealability, in both the arbitration context and otherwise, is finality. (*Otay River*, *supra*, 158 Cal.App.4th at p. 803; *Vivid Video*, *supra*, 147 Cal.App.4th at p. 443.) The concern for finality is embodied in the " 'one final judgment' rule, a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case. 'The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' " (*Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 697; see *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 966-967.) Where, as here, aspects of the parties' dispute remain unadjudicated, the appealed order is not sufficiently final and generally not appealable.

---

[2] The parties do not raise any claim of error regarding the trial court's compliance with section 1286. We therefore need not consider the consequences of the procedure adopted by the trial court, aside from appealability.

Scott contends that the trial court should have entered judgment immediately after its order. He relies on section 1287.4, which provides, "If an award is confirmed, judgment shall be entered in conformity therewith." As the trial court noted, however, the award was "not yet confirmed" at the time of the order. The court contemplated a further hearing regarding the arbitrator's award of attorney fees, so it could not yet confirm the award or enter judgment.

Scott notes that a postjudgment order awarding attorney fees may be appealable. (See § 904.1, subd. (a)(2); *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 654.) He argues, by analogy, that because the further hearing related to attorney fees, the order at issue must be an appealable order or judgment. We disagree. A postjudgment attorney fees order is appealable *because* it follows an appealable judgment. The existence of a prior appealable judgment is determinative, not the nature of the fee order. A hearing regarding attorney fees does not necessarily render a prior order appealable. Here, as noted, the court's order is not final and not appealable. The fact that a future hearing will consider attorney fees does not make it so.

Scott also argues that the order is appealable because it denies his request to be considered the prevailing party. He claims this denial is an appealable collateral order. (See *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.) Again, we disagree. "To qualify as appealable, the interlocutory order must be a final determination of a matter that is collateral—i.e., distinct and severable—from the general subject of the litigation." (*Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1545.) The issue of whether Scott is the prevailing party is not distinct and severable from the general subject of the litigation. Its resolution depends on the outcome of that litigation, including whether the arbitrator properly adjudicated the parties' various claims and

14

whether the trial court properly vacated one such adjudication (and refused to vacate others).  Moreover, " '[t]he majority view is that an appealable "collateral" judgment or order must direct the *payment of money or performance of an act.*' "  (*Ibid*.; see *Skelley*, at p. 368.)  The denial of Scott's request to be considered the prevailing party does not direct payment of money or performance of an act.  It is not separately appealable.

Scott mentions the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.), but he makes no cogent legal argument that the FAA should apply to the question of appealability in California state courts.  We therefore need not consider the issue.  " 'Appellate briefs must provide argument and legal authority for the positions taken.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

B

At oral argument, the parties urged this court to exercise its discretion to treat the appeal and cross-appeal as petitions for writ of mandate.  "Though we . . . have power to treat the purported appeal as a petition for writ of mandate, we should not exercise that power except under unusual circumstances."  (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 (*Olson*).)  In the arbitration context, discretionary writ review "should be done sparingly and only in an appropriate circumstance to avoid defeating the purpose of the arbitration statute."  (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 10.)

Discretionary writ review of an appeal from a nonappealable order may be appropriate "when (1) requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings; (2) the briefs and record

15

included, in substance, the necessary elements for a proceeding for a writ of mandate; (3) there was no indication the trial court would appear as a party in a writ proceeding; (4) the appealability of the order was not clear; and (5) the parties urged the court to decide the issues rather than dismiss the appeal." (*Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 807, citing *Olson*, *supra*, 35 Cal.3d at pp. 400-401.) Most of these elements are present here. The issues have been fully briefed. There is no indication the trial court has an interest that would lead it to appear as a party in a writ proceeding. The appealability of the trial court's order was at least somewhat unclear because, as noted, the order does not appear to be entirely compliant with section 1286. The parties have urged this court to decide the merits of the issues raised in the appeal and cross-appeal. And, while unnecessary trial proceedings do not appear to be a danger, a duplicative appeal and cross-appeal are likely to follow any final judgment.

Moreover, discretionary writ review would not defeat the purpose of the arbitration statute. The arbitration has already occurred. The vast bulk of the issues raised by the parties relating to the arbitration have already been addressed by the trial court and have been briefed by the parties in this proceeding. The trial court's delay in addressing the remaining issues and entering a final judgment appears to be largely a result of the ongoing COVID-19 pandemic. Discretionary writ review, and a decision by this court on the merits, will not cause any additional delay but will instead move the parties toward final resolution of their dispute. We therefore exercise our discretion to treat the appeal and cross-appeal as petitions for writ of mandate.

II

*Motion to Compel Arbitration*

Scott challenges the court's order granting JCB and Barlett's motion to compel arbitration.  He argues, first, that JCB and Barlett did not prove the existence of an arbitration agreement covering the dispute and, second, that the arbitration clause contained in his employment agreement is unconscionable and should not have been enforced.  Neither argument has merit.

A

"In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*)*, LLC* (2012) 55 Cal.4th 223, 236.)  "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." (*Ibid.*)

" ' "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.  [Citations.]" [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.' " (*Oxford Preparatory Academy v. Edlighten Learning Solutions* (2019) 34 Cal.App.5th 605, 610 (*Oxford Preparatory*).)

17

As noted, the trial court granted JCB and Barlett's motion to compel arbitration based on the arbitration clause contained in Scott's signed employment agreement.  The arbitration clause provided, in relevant part, that "any dispute that arises out of or relates to Employee's employment with Employer" shall be submitted to binding arbitration.  (Capitalization omitted.)  The court rejected Scott's defense that the integration clause in the phantom equity agreement nullified the arbitration clause for any claims based on the phantom equity agreement.  The integration clause provided, "This Agreement constitutes the entire agreement between the parties hereto with regard to the subject matter hereof.  This agreement supersedes any other agreements, representations or understandings (whether oral or written and whether express or implied), which relate to the subject matter hereof."  Because the parties have not presented any extrinsic evidence of its meaning, interpretation of the phantom equity agreement presents a legal issue that we consider de novo.  (See *Oxford Preparatory*, *supra*, 34 Cal.App.5th at p. 610.)

" ' "The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  [Citations.]  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.  [Citation.]" [Citation.]  "The words of a contract are to be understood in their ordinary and popular sense." ' " (*Grey v. American Management Services* (2012) 204 Cal.App.4th 803, 806-807 (*Grey*).)

"Under state law, the terms of a final, integrated contract 'may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.'  [Citation.]  But a written instrument 'may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the

18

agreement.' [Citation.] [¶] The court determines whether the parties intended the contract to be a final and complete expression of their agreement. [Citation.] 'The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement. The instrument itself may help to resolve that issue.' [Citation.] The existence of an integration clause is a key factor in divining that intent. [Citation.] 'This type of clause has been held conclusive on the issue of integration, so that parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded.' " (*Grey*, *supra*, 204 Cal.App.4th at p. 807.)

" 'An integration may be partial as well as complete. In other words, the parties may intend a writing to finally and completely express certain terms of their agreement rather than the agreement in its entirety.' " (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 638, fn. 10 (*Cione*).)

In *Grey*, for example, an employee signed an initial agreement containing a broad arbitration clause. (*Grey*, *supra*, 204 Cal.App.4th at p. 805.) He later signed a second agreement with a narrower arbitration clause. (*Ibid*.) The second agreement stated, " 'This Agreement is the entire agreement between the parties in connection with Employee's employment with [employer], and supersedes all prior and contemporaneous discussions and understandings.' " (*Ibid*.) The employee later sued his employer, which moved to compel arbitration based on the initial agreement. (*Id*. at p. 806.) The trial court granted the motion to compel, but the appellate court reversed. (*Ibid*.) It held that the second agreement superseded the initial agreement: "Construing the clause as a whole, we interpret it to mean the contract is the final expression of the parties' agreement with respect to [the

19

employee's] employment and it supersedes the [initial agreement]. The clause says the contract is exclusive as to the parties' respective rights and obligations related to [the employee's] employment. . . . We find the clause's express language that it is the 'entire agreement' and supersedes all prior 'understandings' to mean that the parties intended the contract to be the final and exclusive embodiment of their agreement." (*Id.* at pp. 807-808.) The narrower arbitration clause of the second agreement therefore governed, and it did not cover the employee's claims. (*Id.* at p. 809.)

By contrast, in *Jenks*, the court considered a more limited integration clause. (*Jenks*, *supra*, 243 Cal.App.4th at p. 15.) The employee there accepted an offer of employment that included an arbitration provision. (*Id.* at p. 5.) After several years of employment, the employee signed a termination agreement. (*Ibid.*) The termination agreement was silent regarding dispute resolution, but it did contain an integration clause. (*Id.* at pp. 5, 15.) The integration clause provided, " 'This Agreement constitutes the entire agreement between the parties *with respect to the subject matter hereof and supersedes all prior negotiations and agreements*, whether written or oral [with the exception of the prior confidentiality agreements].' " (*Id.* at p. 15.) The appellate court noted that "the integration clause is explicitly limited to 'the subject matter hereof,' namely, the terms of plaintiff's resignation. The Termination Agreement does not mention arbitration at all, and contains no provisions regarding dispute resolution." (*Id.* at pp. 15-16.) Thus, the termination agreement did not supersede the arbitration provision in the offer letter. (*Ibid.*)

*Jenks* found support in *Cione*, which considered an integration clause similarly limited to " 'the subject matter contained' " in a second agreement. (*Cione*, *supra*, 58 Cal.App.4th at p. 638; *Jenks*, *supra*, 243 Cal.App.4th at

20

p. 16.)  And *Jenks* distinguished *Grey* based on the differences between their respective integration clauses.  "As is apparent, *Grey* is distinguishable from the present case . . . in that the relevant contract at issue in *Grey* did not contain the limiting 'with respect to the subject matter of' language found in . . . the Termination Agreement here."  (*Jenks*, at p. 19.)

Oxford Preparatory* followed *Jenks*, and also distinguished *Grey*, based on similar limiting language.  (*Oxford Preparatory*, *supra*, 34 Cal.App.5th at pp. 611-612.)  The parties in *Oxford Preparatory* entered into a management services agreement and, later, a termination agreement.  (*Id*. at p. 607.)  The management services agreement had an arbitration provision.  (*Ibid*.)  The termination agreement did not have an arbitration provision, but it did have an integration clause.  (*Ibid*.)  The appellate court held that the arbitration provision was not affected by the termination agreement and its integration clause.  (*Id*. at pp. 609-610.)  It explained, "Like the agreement in *Jenks*, the Termination Agreement here includes an integration clause stating there are no other agreements 'with respect to the subject matter hereof.'  While plaintiff acknowledges the 'subject matter' of the agreement in *Jenks* was limited to the plaintiff's resignation, it fails to acknowledge the obvious—the subject matter of the Termination Agreement here was limited to allowing the parties to *cease* performance with the exception of two specified obligations.  The Termination Agreement also is silent on dispute resolution like the agreement in *Jenks*.  We therefore see no fundamental difference between the Termination Agreement and the *Jenks* agreement."  (*Oxford Preparatory*, at p. 612.)  The court went on, "Unlike the superseding contract in *Grey*, which included an arbitration clause, the Termination Agreement is silent on dispute resolution.  [Citation.]  Arbitration is not part of the 'subject matter' of the Termination Agreement.  Thus, *Grey* cannot support a finding

21

that the Termination Agreement contains the parties' complete agreement on arbitration." (*Ibid*.)

Like *Jenks* and *Oxford Preparatory*, the integration clause at issue here was limited to the "subject matter" of the phantom equity agreement. The subject matter of the phantom equity agreement was the phantom equity compensation scheme. Its subject matter did not include arbitration or dispute resolution, so the arbitration clause in Scott's earlier employment agreement remained in force. (*Oxford Preparatory*, *supra*, 34 Cal.App.5th at pp. 611-612; *Jenks*, *supra*, 243 Cal.App.4th at pp. 15-16; see *Cione, supra*, 58 Cal.App.4th at pp. 637-638.) The phantom equity agreement did not purport to be " 'the entire agreement between the parties in connection with Employee's employment' " with employer, as in *Grey*, *supra*, 204 Cal.App.4th at page 807, so Scott's reliance on *Grey* is unpersuasive.

Scott argues that the integration clause should displace his earlier employment agreement because his claims in this litigation are based on the "subject matter" of the phantom equity agreement. Scott is mistaken. The phantom equity agreement may have created additional rights and obligations regarding its subject matter, but it displaced the parties' existing rights and obligations only to the extent they were encompassed by that subject matter. The subject matter of the phantom equity agreement did not include dispute resolution, so the parties' existing rights and obligations regarding arbitration were unaffected. The fact that Scott seeks to enforce the rights and obligations arising from the phantom equity agreement has no bearing on his rights and obligations regarding the manner of that enforcement, which he previously agreed would be binding arbitration for "any dispute that arises out of or relates to Employee's employment with

22

Employer." (Capitalization omitted.) Scott has not shown the trial court erred by granting the motion to compel arbitration.[3]

B

Scott next contends the trial court should not have granted the motion to compel arbitration because the arbitration clause was unconscionable. We disagree. "California law strongly favors arbitration. Through the comprehensive provisions of the California Arbitration Act ([] § 1280 et seq.), 'the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.] As with the FAA [citation], California law establishes 'a presumption in favor of arbitrability.' [Citation.] An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)

" ' "[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*OTO, supra*, 8 Cal.5th at p. 125.) "The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard,

_____

[3]     We note that the trial court implicitly found that the parties never agreed to the phantom equity agreement, and the arbitrator explicitly made such a finding, in which case the integration clause is irrelevant because the parties did not agree to it. We need not consider this alternate ground for affirming the order granting the motion to compel arbitration. We assume the validity of the phantom equity agreement's integration clause for purposes of this section only.

the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*OTO*, *supra*, 8 Cal.5th at p. 125.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. [Citations.] A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making. [Citation.] 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*OTO*, *supra*, 8 Cal.5th at pp. 125-126.)

Scott contends the arbitration clause here must be subject to "particular scrutiny" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100 (*Armendariz*)) because it affects "the enforcement of rights under any statute enacted 'for a public reason' " (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 180 (*Mercuro*)). Scott cites his cause of action for fraud, which is prohibited by various statutes. (See, e.g., Civ. Code, §§ 1709, 1710.) We assume, without deciding, that such particular scrutiny applies here.

24

"The burden of proving unconscionability rests upon the party asserting it." (*OTO*, *supra*, 8 Cal.5th at p. 126.) Where, as here, the evidence is not in conflict, we review the court's order de novo. (*Ibid*.)

Scott contends the arbitration clause was procedurally unconscionable because it was not subject to negotiation, it incorporated AAA employment arbitration rules that were not provided to Scott, and it was difficult to read because it used all capital letters. The arbitration clause, as part of a preemployment agreement apparently not subject to negotiation, was to some degree adhesive. (See *OTO*, *supra*, 8 Cal.5th at p. 126.) "But that alone 'establish[es] only a modest degree of procedural unconscionability.' " (*Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 248 (*Nguyen*); accord, *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1470-1471.) Scott has not shown he was surprised by the arbitration clause or his agreement was the result of oppressive tactics. The arbitration clause was prominent in the agreement, under a separate boldface heading, and it required Scott's separate initials. It was readily readable, notwithstanding the use of all capital letters. And, in the absence of any substantive unconscionability in the AAA employment rules, the fact that they were not provided to Scott does not establish procedural unconscionability. (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246 (*Baltazar*); *Nguyen*, at p. 249.)[4]

As another court has explained, "[Plaintiff] cannot reasonably argue that he was surprised by the existence of an arbitration agreement or its

---

[4] On reply, for the first time, Scott cites several AAA rules that are allegedly substantively unconscionable. We will not consider arguments raised for the first time on reply. (See *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 692-693.) We note that Scott also did not raise any issue of unconscionability in the AAA rules in the trial court.

terms. [The employer] made no attempt to hide the arbitration agreement, and [plaintiff] indicated with his initials that he had read and understood the arbitration agreement. The agreement was adhesive, but represents no surprise and no more than the low level of procedural unconscionability contained in any employment agreement for an employee not in a 'position to refuse a job because of an arbitration agreement.' " (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 447 (*Lange*).) The same holds true here.

Substantively, Scott contends the arbitration agreement was unconscionable because it lacked mutuality; because it failed to explicitly require certain safeguards, such as adequate discovery and a neutral arbitrator; and because it allowed the prevailing party to recover its attorney fees. The agreement allegedly lacked mutuality because JCB reserved the right to enforce Scott's confidentiality obligations "in a court action for injunctive or other equitable relief," regardless of any arbitration proceedings. In part, this reservation of rights reflects California law, which allows a party to an arbitration agreement to obtain provisional relief in court. (See § 1281.8, subd. (b); see also *Baltazar*, *supra*, 62 Cal.4th at pp. 1247-1248.) To the extent it sweeps more broadly, there is a reasonable justification for the limited lack of mutuality based on the importance of JCB's confidential information. (*Lange*, *supra*, 46 Cal.App.5th at p. 450.) "As [our Supreme Court has] recognized, ' "a contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." ' " (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 912; accord, *Baltazar*, at p. 1250.) JCB's legal claims for damages remained subject to arbitration (and were in fact arbitrated in this matter),

26

as were any claims unrelated to confidential information.  Scott has established, at most, a low degree of substantive unconscionability based on lack of mutuality.[5]

In addition, Scott has established no substantive unconscionability at all based on the alleged lack of specificity in the agreement regarding certain safeguards.  The rules governing the arbitration were incorporated by reference; Scott has not shown that these rules were required to be stated in the arbitration agreement itself.  (See *Armendariz, supra,* 24 Cal.4th at pp. 105-106 [no unconscionability where statutory safeguard incorporated by reference]; *Nguyen, supra,* 4 Cal.App.5th at p. 256 [same, AAA rules].)

---

[5]      Scott relies on three authorities, but they are distinguishable.  In two, the employers exempted themselves from arbitration.  (See *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86 ["Nowhere do the [employers] indicate they were bound by the [arbitration] clause."]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 275 [contractual language preserved the employer's "right to file *any* lawsuit" against the employee].)  In the third, there was a very high degree of procedural unconscionability:  "Given [the employer's] highly oppressive conduct in securing [the employee's] consent to its arbitration agreement, he need only make a minimal showing of the agreement's substantive unconscionability."  (*Mercuro, supra,* 96 Cal.App.4th at p. 175.)  The court found that an arbitration provision that excluded " 'claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information' " was unfairly unilateral.  (*Id.* at p. 176.)  This exclusion, combined with a potentially disadvantageous arbitration provider, met "the low threshold of substantive unconscionability in this case" and therefore rendered the arbitration agreement unenforceable.  (*Id.* at p. 179.)  Here, unlike *Mercuro,* the level of procedural unconscionability is low.  The exclusion for certain actions "for injunctive or other equitable relief" by JCB does not constitute any significant substantive unconscionability for the reasons already discussed.  (See *Armendariz, supra,* 24 Cal.4th at p. 117 [requiring a " 'modicum of bilaterality' "]; *Lange, supra,* 46 Cal.App.5th at p. 450.)

27

As to the fee-shifting provision, Scott has cited no authority and offered no cogent legal argument that it is substantively unconscionable. He has therefore waived the issue. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.) In any event, Scott has not shown the fees—expressly limited "to the fullest extent allowed by law"—are not a similar "*type* of expense" that an employee could be required to bear outside the arbitration context. (See *Armendariz*, *supra*, 24 Cal.4th at pp. 110-111.)

In sum, Scott has shown only a low level of procedural unconscionability and a low level of substantive unconscionability. We therefore disagree that the arbitration clause was unenforceable in view of all the relevant circumstances. " 'Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: "*overly* harsh," "*unduly* oppressive," "*unreasonably* favorable." [Citation.] . . . [¶] . . . The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*Baltazar*, *supra*, 62 Cal.4th at p. 1245.) Scott has not shown the court erred by rejecting his defense that the arbitration clause was unconscionable.

## III

### *Scott's Motion to Vacate*

Scott next contends the trial court erred by not vacating the arbitration award in its entirety based on alleged errors of law by the arbitrator. Scott raised four such errors: (1) JCB's claim under the CFAA failed as a matter of law because it had not proved damages beyond attorney fees; (2) JCB did not

have standing to bring claims based on confidential information belonging to other, related entities; (3) JCB could not recover attorney fees for defending Scott's claims based on the phantom equity agreement; and (4) JCB did not prove Scott breached the confidentiality agreement. The court agreed with Scott that JCB could not prevail on its CFAA claim, but it rejected Scott's remaining claims of error. We review the trial court's order on this issue de novo. (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2010) 182 Cal.App.4th 503, 511.)

A

As an initial matter, the parties dispute whether the trial court had the power to review the arbitration award for errors of law. "Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) In *Cable Connection*, however, our Supreme Court explained that the parties to an arbitration agreement can in certain circumstances empower a court to review an arbitration award for errors of law. (*Cable Connection*, *supra*, 44 Cal.4th at p. 1340.) "If the parties constrain the arbitrators' authority by requiring a dispute to be decided according to the rule of law, *and* make plain their intention that the award is reviewable for legal error, the general rule of limited review has been displaced by the parties' agreement. Their expectation is not that the result of the arbitration will be final and conclusive, but rather that it will be reviewed on the merits at the request of either party. That expectation has a foundation in the statutes governing judicial review, which include the ground that '[t]he arbitrators exceeded their powers.' " (*Id.* at pp. 1355-1356.) "[T]o take themselves out of the general rule that the merits of the award are not subject to judicial review,

29

the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts." (*Id*. at p. 1361.)

In *Cable Connection*, the arbitration clause stated, " 'The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.' " (*Cable Connection*, *supra*, 44 Cal.4th at p. 1361, fn. 20.) Our Supreme Court found this language showed the parties' clear agreement to "depriv[e] the arbitrators of the power to commit legal error. They also specifically provided for judicial review of such error." (*Id*. at p. 1361.) The Supreme Court did not decide "whether one or the other of these clauses alone, or some different formulation, would be sufficient to confer an expanded scope of review." (*Ibid*.)

Here, the agreement states, "The parties each expressly waive the right to a jury trial, and agree that the arbitrator's award shall be final and binding on the parties, provided that any award shall be reviewable by a court of law for to [*sic*] the fullest extent allowed by law, including for any error of law by the arbitrator. The arbitrator shall have discretion to award monetary and other damages, or to award no damages, and to fashion any other relief the arbitrator deems appropriate, but only to the extent consistent with law." (Capitalization omitted.)

This language shows the parties' intent to allow review for errors of law. While it describes the arbitrator's award as "final and binding," it qualifies that description with the express provision that the award "shall be reviewable by a court of law" including "for any error of law by the arbitrator." It also expressly limits the arbitrator's discretion in fashioning remedies to those "consistent with [the] law." It is plain that the parties intended that the arbitrator would act in accordance with the law and that

30

the arbitrator's award would be reviewable by a court for errors of law. It both limits the arbitrator's authority and provides a mechanism for review. It is therefore sufficient under *Cable Connection* to established heightened judicial review. (See *Cable Connection*, *supra*, 44 Cal.4th at p. 1361.) JCB and Barlett's contrary interpretation is unpersuasive.

JCB and Barlett contend that *Cable Connection* is inapplicable because the FAA, not California law, applies. The FAA "provides for expedited judicial review to confirm, vacate, or modify arbitration awards." (*Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 578 (*Hall Street*).) "An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court. [(9 U.S.C. § 6.)] Under the terms of [title 9, United States Code, section 9], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in [sections 10 and 11]. Section 10 lists grounds for vacating an award, while [section 11] names those for modifying or correcting one." (*Id*. at p. 582, fns. omitted.) The grounds in sections 10 and 11 of the FAA are exclusive and cannot by supplemented by the parties' contractual agreement. (*Id*. at pp. 578, 586.)

JCB and Barlett point out that the arbitration agreement here states that disputes "shall be submitted to binding arbitration pursuant to the Federal Arbitration Act" (capitalization omitted), and they argue that this language shows the FAA's limited judicial review procedures should apply. The FAA, however, is not an all-or-nothing proposition. A series of Supreme Court opinions "recognizes that if a contract involves interstate commerce, the FAA's *substantive* provision (9 U.S.C. § 2) applies to the arbitration. But the FAA's *procedural* provisions (9 U.S.C. §§ 3, 4, 10, 11) do not apply unless

31

the contract contains a choice-of-law clause expressly incorporating them." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 173-174 (*Valencia*), citing *Cable Connection*, *supra*, 44 Cal.4th 1334; *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376; and *Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394.) These opinions "make[] clear that the question is not whether the parties adopted [*California's*] procedural provisions: The state's procedural statutes (§§ 1281.2, 1290.2) apply by default because Congress intended the comparable FAA sections (9 U.S.C. §§ 3, 4, 10, 11) to apply in federal court. The question, therefore, is whether the parties expressly incorporated the *FAA's* procedural provisions into their agreements." (*Valencia*, at p. 177.)

A reference to the FAA may not be enough; the agreement must reflect the parties' intent to adopt the FAA for enforcement proceedings specifically. For example, in *Cable Connection*, the arbitration agreement provided that " 'any arbitration conducted hereunder shall be governed by the United States Arbitration Act.' " (*Cable Connection*, *supra*, 44 Cal.4th at p. 1350, fn. 12.) The Supreme Court concluded that this reference to the FAA was insufficient to adopt the FAA's enforcement procedures. (*Ibid*.) It agreed with the defendant that "the FAA provisions governing judicial review are specific to federal courts" and "the contract calls only for the arbitration itself to be governed by the federal statute, not postarbitration proceedings in court." (*Ibid*.) It explained, "Sections 10 and 11 of the FAA refer to review by 'the United States court in and for the district wherein the award was made.' [Citation.] The parties' contract did not specify whether enforcement proceedings were to be brought in state or federal court, providing generally that '[t]he decision of the arbitrators may be entered and enforced as a final judgment in any court of competent jurisdiction.' " (*Ibid*.) Moreover, the

defendant's petition to vacate the award was filed, argued, and appealed in state court. (*Ibid*.) Under these circumstances, the parties did not intend for the FAA's procedural provisions regarding enforcement to apply. (*Ibid*.)[6]

Here, like *Cable Connection*, the arbitration agreement's reference to the FAA was tied to the arbitration proceeding itself, followed immediately by a reference to the AAA rules that would govern the arbitration. As to enforcement, the agreement states only that it "shall be reviewable by a court of law," without reference to state or federal court, or state or federal law. It expressly allows review for errors of law, which would be unavailable if the FAA applied. We conclude the arbitration agreement does not expressly adopt the FAA's procedural provisions for enforcement, so by default California law applies. (See *Cable Connection*, *supra*, 44 Cal.4th at p. 1350, fn. 12; *Valencia*, *supra*, 185 Cal.App.4th at p. 177.)

JCB and Barlett rely on *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1122, which interpreted an agreement to arbitrate " 'pursuant to the FAA' " as an agreement to adopt the FAA's procedural provisions. *Rodriguez* was decided before *Cable Connection* and is arguably inconsistent with the latter's interpretation of similar language. We are bound to follow *Cable Connection*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) And, although *Rodriguez* held that the parties intended to adopt "all" of the FAA, it involved the enforcement of an arbitration clause itself—not the enforcement of any subsequent award.

---

[6]     The Supreme Court also noted that both parties proceeded on the theory that California law, not the FAA, applied. (*Cable Connection*, *supra*, 44 Cal.4th at p. 1350, fn. 12.) This fact distinguishes *Cable Connection* from this case, where JCB and Barlett have consistently maintained that the FAA applies both procedurally and substantively. It is not dispositive, however, for the reasons discussed in the text.

(*Rodriguez*, at p. 1122.)  It did not specifically consider whether the parties intended to adopt the FAA's procedural provisions regarding enforcement. For these reasons, we do not find *Rodriguez* persuasive here.

JCB and Barlett also rely on *Countrywide Financial Corp. v. Bundy* (2010) 187 Cal.App.4th 234 (*Countrywide*), but it does not support their position.  In *Countrywide*, the arbitration agreement stated, " 'Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. All arbitrations covered by this Agreement shall be adjudicated in accordance with the state or federal law which would be applied by a United States District Court sitting at the place of the hearing, including applicable statute of limitations.' "  (*Id*. at p. 247.)  This agreement expressly stated that the FAA would govern all proceedings, including enforcement.  It also expressly adopted the law that would be applied by a federal court, not a state court. Thus, in *Countrywide*, "the parties explicitly agreed to have an arbitration award 'adjudicated in accordance with the state or federal law which would be applied by a United States District Court' which does not include the right to review of the merits of the award in the manner asserted by plaintiffs.  As they are entitled, the parties 'expressly and unambiguously' agreed to adjudication of the award in a fashion different from that which would occur

in superior court." (*Id*. at p. 248.) The arbitration agreement here contains no similar express provisions.[7]

## B

Although the arbitration agreement here allows review for an error of law, Scott must still establish such an error to obtain relief. He must show both that the arbitrator erred and that the error was one of law, not fact. "In theory, a determination is one of ultimate fact if it can be reached by logical reasoning from the evidence, but one of law if it can be reached only by the application of legal principles." (*Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3; accord, *Apex LLC v. Sharing World, Inc.* (2012) 206 Cal.App.4th 999, 1009.)

First, Scott contends the arbitrator erred as a matter of law by finding that JCB had standing to pursue a breach of contract claim against Scott based on his retaining and failing to return confidential information. Contrary to Scott's assertion, the issue of standing is a factual question unless the material facts are undisputed. (See, e.g., *Donald v. Sacramento Valley Bank* (1989) 209 Cal.App.3d 1183, 1195-1196.) As to the legal aspects

_____

[7]    *Countrywide* cautioned that its conclusion might not have been the same if the arbitration agreement had been signed after *Hall Street*, since the provisions adopting the FAA would be inconsistent with other provisions in the agreement allowing for expanded judicial review. (*Countrywide*, *supra*, 187 Cal.App.4th at p. 249.) "Under those circumstances, a party seeking review under the [FAA] would have a more difficult time contending the parties 'expressly and unambiguously' agreed not to require use of vacatur review under the California Arbitration Act." (*Ibid*.) *Countrywide*'s hypothetical foreshadows the circumstances here, since Scott's arbitration agreement was signed after *Hall Street*. As *Countrywide* highlights, the parties' agreement that an arbitration award would be reviewable for errors of law is inconsistent with an intent to apply the FAA to enforcement proceedings. It supports our conclusion that the FAA's enforcement provisions do not apply.

of the arbitrator's treatment of standing, Scott has not shown error. He has not shown the arbitrator misperceived the law governing standing or that his findings were not supported by substantial evidence. He does not discuss the arbitrator's reasoning in any detail, including the specific legal theories and evidentiary bases articulated in his award. Scott's bald assertion that the information at issue belonged to entities other than JCB ignores the actual findings made by the arbitrator, and it is insufficient to show error. The arbitrator found that JCB had its own proprietary interest in at least some of the information; its interest was not merely derivative. Scott's belated attempt, on reply, to rebut some (but not all) of the arbitrator's findings likewise relies on unsupported assertions and, at most, raises disputed issues of fact. He has not shown any error of law.

Second, Scott contends the arbitrator erred by awarding attorney fees to JCB and Barlett based on their successful defense of Scott's claims. Scott points out that his claims were based on the phantom equity agreement, which did not have an attorney fee provision. But his employment agreement did have an attorney fee provision covering the prosecution or defense of claims falling within its arbitration agreement. The fact that Scott's claims were based on the phantom equity agreement is of no moment. What matters is whether his claims fell within the arbitration agreement and its attorney fee provision. We have already explained why they do, notwithstanding the phantom equity agreement and its integration clause. (See part II.A., *ante.*) The general rule that parties bear their own attorney fees does not apply where, as here, the parties have agreed otherwise.

Third, Scott contends the arbitrator erred by finding that Scott breached the confidentiality agreement. Whether there was a breach of contract is generally a question of fact. (*Ash v. North American Title Co.*

36

(2014) 223 Cal.App.4th 1258, 1268.) Most of Scott's arguments are either irrelevant to his contractual obligations, or they raise potential conflicts in the evidence, which are not questions of law. (See *Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 292.) Nowhere does he establish that the arbitrator's finding of breach was unsupported by substantial evidence.[8]

In an effort to raise an issue of law, he again questions JCB's standing. We are unpersuaded for the same reasons discussed above. He claims the definition of "Confidential Information" is unenforceable under Business and Professions Code section 16600, but he did not make that argument below. We will not consider it for the first time here. (See *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.) Finally, Scott argues that JCB's claim fails as a matter of law because it had no damages. The arbitrator found that the attorney fees incurred by JCB to recover its electronically stored information were damages. Scott has offered no authority or reasoned legal argument why these attorney fees cannot be damages. He has therefore waived the argument. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

IV

*Scott's Request for Attorney Fees*

Scott contends the court erred by denying his request for attorney fees, as the prevailing party on JCB's statutory claims under the state CDAFA and

---

[8] Some of Scott's assertions appear to be contrary to the record. For example, he claims he "had already return [*sic*] any copies of e-mails he had retained after his termination long before the arbitration hearing started." He cites his attorney's declaration, but that declaration describes how Scott returned these emails *after* the arbitration hearing and *after* he was ordered by the arbitrator to do so.

the federal CFAA. Scott did not bring a written motion for attorney fees in the trial court. At the hearing on Scott's motion to vacate the arbitration award and JCB and Barlett's motion to confirm, Scott referenced JCB's statutory claims and asserted that they "have prevailing party attorneys' fees provisions." He went on, "And so from March 6th, if we're going to tee up that issue and you confirm your tentative, I would just like to be able to bring a cross motion for fees for the prevailing statutory [claims]." In its minute order, the court stated, "[Scott's] request for a motion to determine he is the prevailing party is denied. The arbitrator correctly concluded defendants prevailed on the contract claims."

We generally review an award of attorney fees for abuse of discretion. (*Connerly v. State Personnel Board* (2006) 37 Cal.4th 1169, 1175.) Scott has not shown the court erred. Scott presented the trial court with a vague oral request for statutory attorney fees, accompanied only by his bare assertion that he was entitled to attorney fees under the statutes. He did not cite any portion of the statutes, or any other authority, for the proposition that he was entitled to fees. Nor did he explain the criteria for awarding fees under the statutes and how any potential statutory fee award would interact with the contractual attorney fees due to JCB and Barlett. The trial court was well within its discretion to deny Scott's off-the-cuff request. (See *Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 271-272.)

Scott's treatment of this issue in his appellate briefing is similarly inadequate. Again, he does not explain how the statutes entitled him to fees, describe the criteria for awarding fees under the statutes, or address how the arbitrator's (and the court's) prevailing party determination would affect them. For the CDAFA, he simply cites Penal Code section 502, subdivision (e)(2) without elaboration. He does not explain how it would

38

entitle a prevailing defendant to fees or what a court should consider in awarding them.  (Cf. *Physician's Surrogacy, Inc. v. German* (S.D.Cal. 2018) 311 F.Supp.3d 1190, 1195 [denying request for fees because defendants may not be entitled to fees under the CDAFA and, in any event, the defendant had not shown the plaintiff's claim was "frivolous or abusive"].)  For the federal CFAA, he claims fees "[b]y virtue of the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A," but that statute relates to victims in federal criminal proceedings.  Scott does not explain how it would entitle a successful civil defendant to attorney fees.  The CFAA itself does not contain an attorney fee provision.  (See 18 U.S.C. § 1030(g).)  For these additional reasons, Scott has not established error.  (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956 [" 'We are not bound to develop appellants' argument for them.' "].)[9]

## V

### *JCB and Barlett's Motion to Confirm*

In their cross-appeal, JCB and Barlett contend the trial court should have granted their motion to confirm in its entirety (and denied Scott's motion to vacate in its entirety).  Their primary argument is that the arbitration award was not reviewable for errors of law, either because the FAA applies to its enforcement or because the parties' agreement does not authorize such review.  We have already addressed and rejected these arguments.  (See part III.A., *ante.*)

---

[9]    In their respondents' brief, JCB and Barlett request sanctions against Scott on the ground that his appeal is frivolous.  We deny their request because they have not filed a separate sanctions motion as required by the California Rules of Court, rules 8.276 and 8.492.  (*Mooney v. Superior Court* (2016) 245 Cal.App.4th 523, 537; *Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 858; *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919.)

JCB and Barlett gesture to the merits of the trial court's order, but their conclusory treatment does not justify reversal. They do not question the trial court's legal conclusion that Penal Code section 502 damages do not include attorney fees. They assert that the record was sufficient to support a claim for damages, but they do not acknowledge the court's reasoning, explain why the court erred, or cite any authority in support. This is insufficient. (See *Cahill, supra*, 194 Cal.App.4th at p. 956.)

## DISPOSITION

The appeal and cross-appeal are treated as petitions for writ of mandate. The petitions are denied. The parties shall bear their own costs in this proceeding.

GUERRERO, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.